**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

OSCAR MANUEL REYES PASTÉN,  )
                             )
      Petitioner,  )
                             )    C.A. No. _____
                             )    2:06CV 832-M HT
vs.  )
                             )
FLAVIA CECILIA RUIZ VELÁSQUEZ,  )
                             )    **REDACTED**
      Respondent.  )

*RECEIVED
2006 SEP 18 A 10: 22
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA*

**PETITION FOR THE RETURN OF A CHILD
UNDER THE HAGUE CONVENTION ON THE
CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION**

Oscar Manuel Reyes Pastén ("Reyes") and Flavia Cecilia Ruiz Velásquez ("Ruiz") are

both citizens of Chile, where they had a daughter, ⬛⬛⬛⬛⬛⬛⬛⬛⬛ ("RMRV"),[1]

together. After separating from Reyes, Ruiz fraudulently obtained an order from a Chilean court

authorizing her to temporarily bring RMRV to Texas. Ruiz is in violation of that order and using

her distance from Chile to nullify another Chilean order granting Reyes access rights to his

daughter. Moreover, the facts show – and the Chilean Central Authority has issued an opinion

that – RMRV has been wrongfully retained/removed from Chile within the meaning of the

Hague Convention on the Civil Aspects of International Child Abduction. This Court is,

therefore, obligated by United States treaty to order RMRV returned home to Chile.

### I. The Minor

1.      RMRV is a minor and the subject of this suit. She is a female, born in 1998 in

Concepción, Octava Region, Chile. RMRV is being wrongfully retained by her mother in

---

[1]   In accordance with General Order No. 2:04-mc-3228, the minor's full name is included in a sealed copy of this petition filed with the Court, but is redacted in the publicly available version. The same procedure is followed for other personal data identifiers described in General Order No. 2:04-mc-3228. Only the minor's initials are used in the remainder of this petition.

Montgomery, Alabama.

## II.  The Parties

2.      Reyes is a citizen and resident of San Felipe, Quinta Region, Chile.[2]  He has standing to bring this suit because he is RMRV's father[3] and has been granted access rights to her by Chilean courts.

3.      Ruiz is RMRV's mother.[4]  Based upon the research of counsel, she resides in Montgomery, Alabama.  Ruiz has possession of RMRV.

## III.  Conditions Precedent

4.      All conditions precedent have been performed or have occurred.

## IV.  Jurisdiction

5.      This Court has jurisdiction over this action under 42 U.S.C. § 11603 because it arises under The Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"),[5] as implemented by the International Child Abduction Remedies Act[6] ("ICARA").

6.      No United States court has continuing jurisdiction of this suit.

---

[2]    Ex. 1 (Affidavit of Oscar Manuel Reyes Pasten) ¶ 2.

[3]    Ex. 1 ¶ 2.

[4]    Ex. 1 ¶ 3.

[5]    *Convention on the Civil Aspects of International Child Abduction*, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (1986) [hereinafter *Hague Convention*]; *see also* http://travel.state.gov/family/abduction/hague_issues/hague_issues_1487.html (list of ratifying countries, including Chile).

[6]    42 U.S.C. § 11601-11610 (1988).

### V. Facts

7.    Ruiz and Reyes were never married to each other, but were involved in a romantic relationship with each other in Chile.[7]  RMRV was born as a result of that relationship,[8] and the fact that Reyes is her father has never been contested.

8.    Ruiz and Reyes terminated their romantic relationship in 2000.  Thereafter, RMRV resided primarily with Ruiz, but Reyes had regular access to her.[9]  Reyes also then began paying child support—a duty he continues to fulfill without fail.[10]

9.    Ruiz soon demanded increased child support from Reyes.  She used RMRV as leverage to negotiate the additional support by denying Reyes any contact with his daughter. After the support issue was resolved, Ruiz allowed Reyes some access to RMRV and admitted that she had been wrong to use RMRV as leverage when seeking increased support. Nevertheless, she later continued to fail to provide and/or hindered Reyes's access to RMRV.

10.    In March 2003, Ruiz requested permission from the Chilean courts to take RMRV to Texas, ostensibly to participate in a three-year, post-graduate studies program in Oceanography[11] at Texas A&M University.[12]  Reyes did not receive proper notice of the hearing

---

[7]    *See* Ex. 1 ¶ 5.

[8]    *See* Ex. 1 ¶ 5.

[9]    *See* Ex. 1 ¶ 6.

[10]    *See* Ex. 1 ¶ 6.

[11]    Ex. 2(B) at 3.

[12]    The Chilean orders do not identify Texas A&M University by name.  Ruiz was, however, living in College Station, Texas – where Texas A&M is located – until her recent move to Alabama. *See* Ex. 3 (U.S. Postal Service receipt signed by Ruiz in College Station, Texas).  In addition, Ruiz told the Chilean court that she intended to study Oceanography [*see* Ex. 2(B) at 3] at the same university as her husband [*see* Ex. 2(B) at 9]. Texas A&M appears to have the only Oceanography graduate program in the State of Texas, and is where Ruiz's husband, Walter Jones, was enrolled. *See* Ex. 4 (letter from Texas A&M University confirming Jones's enrollment in its Oceanography program).

The translation of the Chilean order refers in one place to the "University of Texas" [*see* Ex. 2(B) at 18], but that appears to be a misnomer.  Regardless, Ruiz has never been enrolled at the University of Texas [*see* Ex. 5], which is located in Austin, Texas and does not have an Oceanography department.

on Ruiz's application to the court, but she nevertheless attempted to have the Chilean court decide her request ex parte, without giving Reyes an opportunity to object.

11.    When Reyes finally learned of the hearing on Ruiz's application to take RMRV to Texas, it had already taken place and Reyes was terrified that he would forever lose contact with his daughter. Ruiz had recently married a U.S. citizen who lived in College Station, Texas, and Reyes was rightly suspicious that her true intention was to take RMRV to Texas and settle there with her new husband, rather than just to attend graduate classes for three years at Texas A&M University and then return to Chile. Therefore, he went to the Chilean court and showed that he did not receive proper notice of the hearing. And out of fear of losing contact with his beloved daughter, Reyes vigorously contested Ruiz's request to take RMRV to Texas. Nevertheless, in October 2003, the Chilean court of appeals of San Miguel granted Ruiz permission to take RMRV to the State of *Texas*.[13] In fact, the Chilean court's permission was for the limited purpose of participating in the post-graduate Oceanography program, which could not exceed three years.[14] The court also recognized the importance of RMRV having continued contact with her father, and granted him access rights during her vacations.[15]

12.    Ruiz left Chile with RMRV on December 23, 2003, without so much as giving RMRV the opportunity to say goodbye to her father, or vice-versa.[16] Ruiz neither gave Reyes any notice that she was leaving that day, nor did she leave him any way to contact her or RMRV. In fact, Reyes did not find out that RMRV was gone until January 2004.

13.    In July 2004, the Chilean court of appeals of Valdivia finalized Reyes's access

---

[13]    *See* Ex. 2(B) at 19 (official English translation of the October 30, 2003 order) and Ex. 2(A) (original Spanish version of the October 30, 2003 order).

[14]    *See* Ex. 2(B) at 19-20.

[15]    *See* Ex. 2(B) at 19-20.

[16]    *See* Ex. 1 ¶¶ 8-9.

rights to RMRV.[17]  The court defined the periods that Reyes would be entitled to have possession of RMRV by reference to her vacation schedule, which changes depending on which country she is living in.  Specifically, it stated, "*the visitation right is granted to the father during the vacation period of the minor in the country where her mother resides.*"[18]  This ensured that the order would automatically adapt to the vacation schedule of the country RMRV is living in at a given time.  It also took into account the logistical realities of when RMRV would be able to travel back to Chile, and when Reyes would be able to have possession of her.  This order is in full force and effect, and has not been vacated, stayed, or modified.[19]

14.    Since Ruiz came to the U.S. with RMRV in 2003, she has consistently and repeatedly violated the Chilean court orders by denying Reyes any access to RMRV whatsoever.[20]  In fact, Ruiz has thwarted all attempts by Reyes to contact or communicate with his daughter.[21]  Although Ruiz failed to leave Reyes any way of getting in touch with her or RMRV, Reyes eventually located the phone number of Ruiz's spouse, Walter Jones.[22]  Jones provided Reyes with a phone number where he could contact RMRV and Ruiz.[23]  Reyes called that number four times (at convenient times suggested by Jones), but each time Ruiz callously denied his request to speak with his daughter.[24]  Soon thereafter, Ruiz changed her phone

---

[17]    *See* Ex. 2(D) at 2 (official English translation of July 26, 2004 order) and Ex. 2(C) (original Spanish version of the July 26, 2004 order).

[18]    *See* Ex. 2(D) at 2.

[19]    Although its jurisdiction over the matter is obvious, in accordance with Section 30-3B-308 of the Code of Alabama, Reyes states that the Chilean courts did not expressly identify the jurisdictional basis it relied upon in exercising jurisdiction.

[20]    *See* Ex. 1 ¶ 7.

[21]    *See* Ex. 1 ¶¶ 7, 10-14.

[22]    *See* Ex. 1 ¶ 10.

[23]    *See* Ex. 1 ¶ 10.

[24]    *See* Ex. 1 ¶ 10.

number.[25]  In addition, despite Ruiz's representation to the Chilean court that she intended to travel to Chile at least once a year so that RMRV could visit her paternal family,[26] she has not kept that promise.  Because of Ruiz's shameful conduct, Reyes has not seen or communicated with his daughter in over 2½ years.

15.    On June 16, 2006, Reyes filed a petition[27] in the 85th Judicial District Court of Brazos County, Texas to register the Chilean orders granting him access rights to RMRV.  The Texas court sent notice of the petition for registration to Ruiz at her address in College Station, Texas.  Ruiz signed a U.S. Postal Service receipt for the notice in College Station on June 23, 2006.[28]

16.    Ruiz never objected to the registration and, on August 8, 2006, Reyes filed a petition in the Texas court to enforce his access rights to RMRV.  On August 17, 2006, a Brazos County Sheriff went to Ruiz's residence in College Station, Texas to serve her with the petition to enforce, and a notice for a hearing on it that was scheduled for August 25, 2006.  Upon arrival, the Sheriff learned that Ruiz no longer lives at that address.  The new occupants of that address informed the Sheriff that they had been living there since July 14, 2006.  Investigation has revealed that Ruiz is now living in Montgomery, Alabama.  Thus, Ruiz went to Alabama with RMRV sometime between June 23, 2006 and July 14, 2006.

17.    While investigating Ruiz's current whereabouts after learning that she had left College Station, it was discovered that Ruiz has *never* attended Texas A&M University.[29]  Thus, it appears that Ruiz misrepresented to the Chilean court her intentions in coming to Texas and

---

[25]    *See* Ex. 1 ¶ 10.

[26]    *See* Ex. 2(B) at 3 ¶ 4.

[27]    Cause. No. 06-001525-CV-85.

[28]    Ex. 3.

[29]    *See* Ex. 6 (letter from Texas A&M University denying Ruiz ever attended the school).

fraudulently obtained that court's permission to leave Chile with RMRV.

18.    Reyes is not aware of any other proceeding that has been commenced that could affect this proceeding.[30]

### VI. The Hague Convention on the Civil Aspects of International Child Abduction

19.    On July 1, 1994, the Hague Convention on the Civil Aspects of International Child Abduction[31] (the "Hague Convention") entered into force between the U.S. and Chile. The International Child Abduction Remedies Act[32] ("ICARA") implemented the Hague Convention in the United States.[33]  The Hague Convention is a United States treaty within the meaning of Articles II and VI of the United States Constitution.

20.    The stated purpose of the Hague Convention is "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access."[34]   The Hague Convention specifies that its objects are:  "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State;  and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."[35]

21.    To effect these general goals, Articles 3, 5, 12, and 13 of the Hague Convention together establish the remedy of return of a child to his or her country of habitual residence and

---

[30]  *See* Ex. 1 ¶ 4(e).

[31]  *Convention on the Civil Aspects of International Child Abduction*, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (1986) [hereinafter *Hague Convention*]; *see also* http://travel.state.gov/family/abduction/hague_issues/hague_issues_1487.html (list of ratifying countries, including Chile).

[32]  42 U.S.C. § 11601-11610 (1988).

[33]  U.S. Department of State regulations implementing the Convention and ICARA can be found at 22 C.F.R Part 94.

[34]  *Hague Convention*, supra note 1, Intro.

[35]  *Hague Convention*, supra note 1, Art. 1.

set forth the circumstances under which the return remedy is available.[36] The Hague Convention is designed to restore the pre-abduction status quo and to deter parents from crossing international borders in search of a more sympathetic forum.[37] Thus, it authorizes a federal district court to determine the merits of the abduction claim but does *not* allow it to consider the merits of any underlying custody dispute.[38] This Court has no power to pass on the merits of custody; its role is to determine in what *jurisdiction* the child should be physically located so that the proper jurisdiction can make those custody decisions.[39]

22.    Article 12 of the Hague Convention establishes the general rule that a child who has been "wrongfully removed or retained" within the meaning of the Convention shall be returned unless more than a year has elapsed between the removal and the date of commencement of the proceedings and the child has become settled.[40] Article 3 of the Hague Convention outlines the conduct that is "wrongful" for purposes of Article 12.

23.    Under Article 3, the removal or retention of a child is wrongful if it violates the "rights of custody" of another person, either jointly or alone, and those "rights of custody" were actually being exercised at the time of the removal or retention, or would have been exercised absent the removal or retention.[41] Specifically, Article 3 provides:

---

[36] *Hague Convention*, supra note 1, Art. 3, 5, 12, and 13; Furnes v. Reeves, 362 F.3d 702, 710 (11th Cir. 2004).

[37] Furnes, 362 F.3d at 711.

[38] Morris v. Morris, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the Convention, [this Court has] no power to pass on the merits of custody"); *see also* Currier v. Currier, 845 F. Supp. 916, 920 (D.N.H. 1994) (citing Friedrich v. Friedrich, 983 F.2d 1396, 1399 (6th Cir. 1993)); Meredith v. Meredith, 759 F. Supp. 1432, 1434 (D. Ariz. 1991).

[39] Loos v. Manuel, 651 A.2d 1077, 1080 (N.J. Super. Ct. Ch. Div. 1994).

[40] *Hague Convention*, supra note 1, Art. 12; 42 U.S.C. § 11601; Furnes, 362 F.3d at 710-11.

[41] *Hague Convention*, supra note 1, Art. 3.

The removal or the retention of a child is to be considered wrongful where-

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.[42]

24.    The Hague Convention does not include an exhaustive list of rights that constitute "rights of custody."[43]    Article 5 does, however, distinguish between "rights of custody" and "rights of access" as follows:

> a) "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
>
> b) "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.[44]

Accordingly, "rights of custody" is a term expressly defined in the Hague Convention.  As the Eleventh Circuit has noted, "in American courts, we tend to think of custody rights primarily in the sense of physical custody of the child.   However, in applying the Hague Convention, we must look to the definition of 'rights of custody' set forth in the Convention and not allow our somewhat different American concepts of custody to cloud our application of the Convention's terms.[45]  Specifically, . . . we must think of 'rights of custody' as including 'rights relating to the care of the person of the child,' and in particular, 'the right to determine the child's place of

---

[42]  *Hague Convention*, <u>supra</u> note 1, Art. 3; <u>Furnes</u>, 362 F.3d at 711.

[43]  <u>Furnes</u>, 362 F.3d at 711.

[44]  *Hague Convention*, <u>supra</u> note 1, Art. 5; <u>Furnes</u>, 362 F.3d at 711.

[45]  <u>Furnes</u>, 362 F.3d at 711.

residence.'"[46]

25.    Further, Article 13 of the Hague Convention sets forth certain narrow exceptions to Article 12's mandatory-return rule. Under Article 13, a court is not bound to order the child's return if the person opposing the return establishes that "the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention . . . ."[47]

26.    In sum, the Hague Convention provides that the removal or retention of a child from his or her State of habitual residence is wrongful if the petitioner establishes by a preponderance of the evidence that: (1) the child has been removed or retained in violation of the petitioner's "rights of custody," (i.e., "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence,") either jointly or alone; and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."[48] Once the petitioner satisfies this burden, the child *must* be returned to her State of habitual residence unless the respondent establishes one of these affirmative defenses: (1) that the petition for return was filed more than one year from the removal or retention and the child is well-settled in her new environment, or (2) that the petitioner "was not actually exercising the custody rights at the time of the removal or retention, or had consented to or subsequently acquiesced in the removal or retention."[49]

---

[46]    Furnes, 362 F.3d at 711.

[47]    *Hague Convention*, supra note 1, Art. 13; Furnes, 362 F.3d at 711.

[48]    *Hague Convention*, supra note 1, Art. 3, 5; 42 U.S.C. § 11603(e)(1)(A); Furnes, 362 F.3d at 712.

[49]    *Hague Convention*, supra note 1, Art. 12, 13; 42 U.S.C. § 11603(e)(2)(B); Furnes, 362 F.3d at 712.

## VII.  Ruiz's Wrongful Removal / Retention of RMRV (Count 1)

### A.    Chile is RMRV's Habitual Residence

27.    RMRV was born in Chile.[50]  Both of her parents are Chilean citizens.[51]  Before Ruiz took her to the United States, RMRV lived "permanently with her mother in the City of Puerto Varas [Chile]."[52]  Thus, Chile is RMRV's habitual residence, which is the reason Ruiz had to seek approval from the Chilean courts to *temporarily* take her to Texas.[53]

### B.    Reyes Has Rights of Custody

28.    The Eleventh Circuit recently applied the Hague Convention to facts similar to this case and found that rights of custody existed.  In Furnes v. Reeves,[54] the mother was a citizen and resident of the United States, while the father was a citizen and resident of Norway.  They married and settled in Norway, and their daughter was born in Norway.

29.    After separating, the mother and father entered into a settlement agreement.  It provided that they would maintain "joint parental responsibility," but that the daughter would live with her mother and the father would have certain access to her.  Specifically, the agreement provided that "[t]he daughter shall live with her mother, who shall have custody of the child."

30.    "Joint parental responsibility" is statutorily defined in Norway as including "the right and the duty to make decisions for the child in personal matters . . . ."  But where the minor lives permanently with only one parent, Norwegian law does not allow the other parent to "object to the parent with whom the child lives making decisions concerning important aspects

---

[50]    Ex. 1 ¶ 5; Ex. 9 (RMRV's birth certificate).

[51]    *See* Ex. 9.

[52]    Ex. 2 (B) at 8-9; Ex. 1 ¶ 4.

[53]    *See, generally,* Ex. 2(B).

[54]    362 F.3d 702.

of the child's care . . . ."

31.     Norwegian law also requires the consent of both parents before their child can move abroad.  Thus, the father also had decision-making authority over whether the daughter could live outside of Norway, generally referred to as a "*ne exeat*" right.

32.     In May 2001, the mother and father agreed to modify the settlement agreement so that the daughter could travel to the United States with her for the summer.  In exchange for the father's consent to take the daughter to the United States, the mother agreed that the daughter would spend longer periods of time with him than otherwise permitted by the settlement agreement.  But neither the mother nor the daughter ever returned from the United States, or contacted the father to let him know their whereabouts.

33.     The father filed a petition under the Hague Convention to return the daughter to Norway.  The trial court denied the request to return the daughter because, it thought, the father only had access rights to her, rather than the custody rights required to order her returned to Norway under Article 12 of the Hague Convention.

34.     On appeal, the Eleventh Circuit noted that the Norwegian statute that limited the rights of the other parent to object to the parent with whom the child lives making decisions concerning "important aspects of the child's care" was narrower than the broad right to "make decisions for the child in personal matters" conferred on those with joint parental responsibility.  Thus, the court held that the father may well have had a "right of custody" as defined under the Hague Convention on this basis alone.

35.     But the main foundation of the court's opinion was the father's *ne exeat* right, which the court held created a right of custody for at least three reasons.  First, the *ne exeat* right amounted to "the right to determine the child's place of residence" within the meaning of

Article 5 and, therefore, a right of custody.[55]   Second, the *ne exeat* right effectively granted the

father rights relating to care of the daughter through his granting or denying consent for her to

move abroad.[56]   Finally, the court found that the *ne exeat* right endowed the father with

significant decision-making authority over the daughter's care:

> By requiring that [the daughter] remain in Norway, [the father] can ensure that
> [the daughter] will speak Norwegian, participate in Norwegian culture, enroll in
> the Norwegian school system, and have Norwegian friends.   That is, [the father]
> effectively can decide that [the daughter] will be Norwegian.   The right to
> determine a child's language, nationality, and cultural identity is plainly a right
> "relating to the care of the person of the child" within the meaning of the
> Convention.[57]

Therefore, the Eleventh Circuit reversed and remanded the case with instructions that the

daughter be returned home to Norway.[58]

36.    Like Norway, Chilean law grants Reyes certain rights of custody even though

RMRV lives with Ruiz instead of him.   Specifically, Article 224 of the Chilean Civil Code[59]

provides that both parents of a child "shall be responsible for its personal care, raising and

education."   Similar to Furnes, Article 225 places a limitation on those rights because Ruiz and

RMRV live apart from Reyes:   "if a child's parents live apart, the mother shall be responsible for

its personal care."[60]   But also like Furnes, the limitation in Article 225 is not as broad as the grant

of authority in Article 224.   Specifically, Article 225 still expressly grants Reyes the right to help

raise and educate RMRV.   And Article 229 provides that a father or mother who does not have

the personal care of a child has not just a right, but a *duty* to keep a direct, permanent relationship

---

[55]   Furnes, 362 F.3d at 714.

[56]   Furnes, 362 F.3d at 716.

[57]   Furnes, 362 F.3d at 716.

[58]   Furnes, 362 F.3d at 724.

[59]   Ex. 7, art. 224.

[60]   Ex. 7, art. 225.

with the child, and to contact the child frequently and freely.[61]  Such rights are essentially the same as those recognized by the Eleventh Circuit as "plainly" "'relating to the care of the person of the child' within the meaning of the [Hague] Convention," and Reyes has rights of custody on that basis alone.[62]

37.    In addition, Chile also gives Reyes a *ne exeat* right.[63]  And as discussed above, the Eleventh Circuit has firmly held that the *ne exeat* right amounts to the right to determine the child's place of residence.[64]  It also held that the *ne exeat* right creates other rights relating to the care of the person of the child.[65]  Thus, Reyes has rights of custody over RMRV within the meaning of the Hague Convention.

## C.    Ruiz is Violating Reyes's Rights of Custody

38.    Because of Reyes's *ne exeat* right, there are only two ways that Ruiz can lawfully have RMRV outside of Chile:  (1) Reyes consents to it; or (2) Chilean courts expressly authorize it.  Reyes has *never* authorized Ruiz to take RMRV to, or to keep her in, the United States, which is what caused Ruiz to seek authorization from the Chilean court to do so.

39.    As noted above, the Chilean court granted Ruiz permission to take RMRV to "The United States of America, *Texas*"—not Alabama.[66]  Moreover, the Chilean court's permission was for the "sole"[67] purpose of Ruiz taking postgraduate courses at a university in the

---

[61]  *See* Ex. 7, art. 229.

[62]  Furnes, 362 F.3d at 716.

[63]  *See* Ex. 8 at Art. 49; Ex. 2(B) at 12-13 (discussing Article 49).

[64]  Furnes, 362 F.3d at 714.

[65]  Furnes, 362 F.3d at 716.

[66]  Ex. 2(B) at 19 (emphasis added).

[67]  *See* Ex. 2(B) at 13 (stating, "[t]he petitioner refers to the conduction of a training course as the only reason of her trip, which is the sole interest of the petitioner . . . .")

State of Texas, which could not exceed three years.[68]  Because Ruiz is no longer in the State of

Texas and has never taken the referenced postgraduate courses, she has exceeded all authority

granted to her by the Chilean court.    Thus, Ruiz has neither Reyes's nor the Chilean court's

authorization to live with RMRV in Alabama and she has, therefore, wrongfully removed and/or

retained RMRV within the meaning of Article 3 of the Hague Convention.

40.    As demonstrated above, moreover, Ruiz has completely sequestered RMRV away

from Reyes during the time she has been in the United States.  Her true purpose in coming to the

United States is, therefore, quite obvious: to permanently settle in the United States with RMRV

and her new husband, erasing Reyes from RMRV's life forever (as Reyes feared all along).

Such conduct by Ruiz is not only in direct violation of Reyes's *ne exeat* rights, but also to his

statutory rights to raise, educate, and keep a direct, permanent relationship with RMRV.

## D.    Reyes Exercised His Rights of Custody

41.    "[I]f a person has valid custody rights to a child under the law of the country of

the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the

Hague Convention short of acts that constitute clear and unequivocal abandonment of the

child."[69]  As already discussed, Reyes did not consent to Ruiz taking RMRV to Texas for fear

that she would never return to her home country of Chile, and that he would lose contact with her

forever.  And when Ruiz applied to the Chilean court for permission to take RMRV to Texas

over Reyes's objection, the Chilean court's opinion shows that he vigorously opposed it.[70]  Thus,

Reyes could not have more fully exercised his *ne exeat* right, which the Eleventh Circuit

recognizes includes the right to ensure that RMRV remains in Chile, speaks Spanish, participates

---

[68]    Ex. 2(B) at 19.

[69]    Friedrich v. Friedrich, 78 F.3d 1060, 1066 (6th Cir. 1996).

[70]    *See, e.g.,* Ex. 2(B) at 4-6, 9-10, and 13.

in Chilean culture, enrolls in Chilean schools, and has Chilean friends – the right to decide that RMRV will be Chilean.[71]

42.    The Chilean court opinion further states that "[a]ccording to the facts submitted . . . it has been established . . . that the minor lives with her mother and keeps a *direct, personal relation with her father* . . . ."[72] Moreover, the court recognized that Reyes is not willing to lose contact with RMRV, that he wants to be involved in her personal development and education, that he is concerned with and interested in her raising and upbringing, and that he wants to maintain a close relationship with her.[73] Thus, no credible argument can be made that Reyes did not fully exercise his rights of custody.

## E.    This Action is Filed Less Than One Year After the Wrongful Removal / Retention

43.    As discussed above, Ruiz fled to Alabama with RMRV sometime between June 23, 2006 and July 14, 2006. Thus, this action is brought less than one year after RMRV's wrongful removal/retention.[74]

## F.    The Court is Obligated by United States Treaty to Order RMRV Returned to Chile.

44.    Where a child has been wrongfully removed or retained within the meaning of Article 3 of the Hague Convention, courts "*shall* order the return of the child forthwith."[75] As demonstrated above, Ruiz has wrongfully retained/removed RMRV. In fact, the Chilean Central Authority has issued an opinion that RMRV has been wrongfully retained/removed.[76] Therefore,

---

[71]    Furnes, 362 F.3d at 716.

[72]    Ex. 2(B) at 10 (emphasis added).

[73]    Ex. 2(B) at 13.

[74]    Ruiz's wrongful removal/retention must be distinguished from Ruiz's failure to recognize Reyes's rights of access. There is no return remedy for denial of a right of access.

[75]    *Hague Convention*, supra note 1, Art. 12 (emphasis added); Furnes, 362 F.3d at 710-11.

[76]    Ex. 10.

the Court must order Ruiz to return RMRV home to Chile, just as the Eleventh Circuit did in Furnes.[77]

## G.    Fees and Costs.

45.    In accordance with 42 U.S.C. 11607, Reyes further seeks recovery of the court costs, legal fees, and other costs and expenses he has been forced to incur in connection with this action.

## VIII.  Violation of Rights of Access (Count 2)

46.    RMRV's return to Chile is the only proper remedy in this action. Nevertheless, pleading in the alternative, Section 30-3B-105(b) of the Code of Alabama requires Alabama courts to recognize and enforce custody determinations made in foreign countries. It further requires Alabama courts to treat a foreign country as if it were a state of the United States for purposes of applying the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[78] Therefore, because Chile has made a child custody determination granting Reyes access rights to RMRV, the Court is obligated to enforce it by ordering the relief requested below.[79]

47.    In addition to the rights expressly stated by the Chilean courts, Reyes has natural rights as RMRV's father. In fact, Chilean law states that nonpossessory parents like Ruiz have not just a right, but a duty to contact RMRV frequently and freely:

> A father or mother who does not have the personal care of a child shall not be deprived of the *right* nor shall be exempted from the *duty* to keep a direct, permanent relationship with it, and *to contact it as frequently and freely* as agreed with its guardian or, otherwise, as determined by the judge as being in the best interest of the

---

[77]  Furnes, 362 F.3d at 724-25.

[78]  ALA. CODE. § 30-3B-105(a).

[79]  ALA. CODE. § 30-3B-105.

child.[80]

Thus, Chilean law condemns conduct like Ruiz's, where a father is denied all access to his child.

48.    Similarly, it is the public policy of the State of Alabama to assure that minor children have frequent and continuing contact with parents who, like Reyes, have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated.[81] Thus, under both Chilean and Alabama law, Reyes is entitled to contact RMRV by telephone, email, etc.

49.    In addition, Section 3-3-154 of the Code of Alabama declares that parents like Reyes have the right to have all records and information pertaining to the child, including, but not limited to the following:

            a.    medical records;
            b.    physiological records;
            c.    dental records;
            d.    scholastic records;
            e.    athletic records;
            f.    extracurricular records; and
            g.    law enforcement records.

The Code of Alabama provides that these rights exist unless they are limited by a court order.[82] Therefore, Reyes is entitled to these statutory rights because no court has divested him of them.

50.    As already stated, RMRV's return home to Chile is the only proper remedy in this action.  Nevertheless, Reyes alternatively asks the Court to:

---

[80]  *See* Ex. 7, art. 229 (emphasis added).

[81]  ALA. CODE. § 30-3-150.

[82]  ALA. CODE. § 30-3-154.

a.      order Ruiz to deliver custody of RMRV to Reyes—in, at his option, either Chile or the United States—during any dates that Reyes requests while she is on vacation;

b.      order Ruiz to communicate with Reyes in a civil manner to facilitate his visitation periods;

c.      order Ruiz to provide Reyes, and RMRV's relatives on his side of the family, with daily, unrestricted access to RMRV via email, telephone, mail, instant messenger service, and any other reasonable medium of communication, regardless of who is entitled to possession of RMRV during any given time;

d.      order Ruiz to recognize and facilitate Reyes's rights under Section 3-3-154 of the Code of Alabama;

e.      grant Reyes additional periods of access to compensate for those periods denied by Ruiz;[83]

f.      order Ruiz to reimburse Reyes for the documented expenses he has incurred as a result of her wrongful denial of access to RMRV, currently U.S. $714 (his actual expenses are much higher);[84]

g.      order Ruiz to pay, in accordance with Section 30-3B-312 of the Code of Alabama, the reasonable fees, costs, and expenses of Reyes's attorneys in this matter, the law firm of Weil, Gotshal & Manges LLP; and

h.      grant Reyes all other relief to which he is entitled.

## IX. Provisional Orders

51.     Pending further hearing in this Court, Reyes requests that he be given immediate access to RMRV as outlined above in Paragraphs 50 (a), (c), and (d).

52.     Reyes further asks the Court to issue an immediate order prohibiting the removal of RMRV from its jurisdiction (except to return to Chile), and that it take into safe-keeping all of RMRV's and Ruiz's travel documents.

---

[83]    ALA. CODE. § 30-3B-304(3).

[84]    Ex. 1 ¶ 15

## X. Bond

53.     In accordance with Section 30-3-6(b) of the Code of Alabama, Reyes further requests that Ruiz be ordered to execute a bond or deposit security to ensure her compliance with the Chilean court's orders.

## XI. Expedited Hearing

54.     The Hague Convention mandates that the Court act expeditiously in this proceeding, and generally requires a decision within six weeks.[85]

55.     Reyes hereby provides the following statutorily required notice to Ruiz:

At the hearing under Section 30-3B-305 of the UCCJEA, the Court will immediately award the Petitioner the requested access to the minor and order the payment of fees, costs, and expenses under Section 30-3B-312 of the Code of Alabama, and may schedule a hearing to determine whether further relief is appropriate, unless the Respondent appears and establishes that:

(1) the child custody determination has not been registered and confirmed under Section 30-3B-305 of the Code of Alabama and that:

(A) the issuing court did not have jurisdiction under Article 2;

(B) the child custody determination for which enforcement is sought has been vacated, stayed, or modified by a court having jurisdiction to do so under Article 2; or

(C) the Respondent was entitled to notice, but notice was not given in accordance with the standards of Section 30-3B-108, in the proceedings before the court that issued the order for which enforcement is sought; or

(2) the child custody determination for which enforcement is sought was registered and confirmed under Section 30-3B-304, but has been vacated, stayed, or modified by a court of a state having jurisdiction to do so under Article 2.

---

[85]    *Hague Convention*, supra note 1, Art. 11.

## XII.  Registration of Child Custody Determinations

56.    In accordance with Section 30-3B-305(a) of the Code of Alabama, the above-referenced Chilean orders are being registered with this Court concurrently with this Petition.  A copy of the registration is attached as Ex. 2.

## XIII.  Authentication Unnecessary

57.    Given the urgency of Hague Convention petitions, ICARA provides that no authentication of any documents is required in cases like this.[86]

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:_____
     Sylvia Mayer
     Texas State Bar No. 00787028
     Scott R. Dayton
     Texas State Bar No. 24007093
     Dolores Cavatore
     Texas State Bar No. 24027800
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:    713-546-5000
Facsimile:     713-224-9511

**ATTORNEYS FOR PETITIONER,
OSCAR MANUEL REYES PASTÉN**

---

[86]    42 U.S.C. § 11605.

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| OSCAR MANUEL REYES PASTÉN, | ) | |
| | ) | |
| | ) | C.A. No. _____ |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLAVIA CECILIA RUIZ VELÁSQUEZ, | ) | |
| | ) | |
| Respondent. | ) | |

## **VERIFICATION**

My name is Oscar Manuel Reyes Pastén. I am the Petitioner in the foregoing Petition For The Return of a Child Under the Hague Convention on the Civil Aspects of International Child Abduction. I have personal knowledge of the allegations and facts stated in it, and they are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on the ___09___ day of _____September_____, 2006.

_____
Oscar Manuel Reyes Pastén

## LIST OF EXHIBITS

Exhibit No.

Declaration of Oscar Manuel Reyes Pastén ........................................................................ 1

Registration of Foreign Determination of Access Rights to Child ..................................... 2

    Oct. 30, 2003 Order of Chilean Court of Appeals [Spanish version] ........................... 2(A)

    Oct. 30, 2003 Order of Chilean Court of Appeals [English version] ........................... 2(B)

    July 26, 2004 Order of Chilean Court of Appeals [Spanish version] ........................... 2(C)

    July 26, 2004 Order of Chilean Court of Appeals [English version] ........................... 2(D)

U.S. Postal Service receipt signed by Flavia Cecilia Ruiz Velásquez ................................ 3

Letter from Texas A&M University regarding Walter Jones ............................................. 4

Letter from The University of Texas regarding Flavia Cecilia Ruiz Velásquez ................ 5

Letter from Texas A&M University regarding Flavia Cecilia Ruiz Velásquez ................. 6

Article 224 of the Civil Code of the Republic of Chile ...................................................... 7

Articles 222-241 of the Civil Code of the Republic of Chile ............................................ 8

RMRV's birth certificate .................................................................................................... 9

Letter from the Chilean Central Authority ....................................................................... 10

# EXHIBIT 1

**REDACTED**

## <u>DECLARATION OF OSCAR MANUEL REYES PASTÉN</u>

1.    My name is Oscar Manuel Reyes Pastén. I am over 18 years of age, have never been convicted of a felony or a misdemeanor involving moral turpitude and am fully competent to make this declaration. All facts contained in this declaration are true and correct and are based on my personal knowledge.

2.    I am the father of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("RMRV"). I am a Chilean citizen and resident. I live in San Felipe, Quinta Region, Chile. I am an electronics engineer in Chile.

3.    Flavia Cecilia Ruiz Velasquez ("Ruiz") is RMRV's mother. On information and belief, both Ruiz and RMRV live with Ruiz's current husband, Walter Jones, in Montgomery, Alabama.

4.    Based on the research of my attorneys, Ruiz's and RMRV's current address is believed to be ▮▮▮▮▮▮▮▮▮▮ Montgomery, Alabama.

5.    Upon information and belief, in the last five years, RMRV has lived at the following addresses and with the following individuals:

   i.    2001: RMRV lived with Ruiz in a house in Valle Nongen, Concepción, Octava Región, Chile.

   ii.   From 2002 to June 2003: RMRV lived with Ruiz and her maternal aunt, Claudia Velásquez Ruiz, in a house on ▮▮▮▮▮▮▮▮ Puerto Varas, Décima Región, Chile.

   iii.  From July 2003 to December 2003: RMRV lived with Ruiz and her maternal grandmother, María Ruiz Campos, in a house on ▮▮▮▮▮▮▮ Sector Huachocopihue, Valdivia, Décima Región, Chile.

   iv.   From December 2003 until the July 2006: RMRV lived with Ruiz and Walter Jones in College Station, Texas.

   v.    RMRV is believed to be living with Ruiz and Walter Jones in Montgomery, Alabama at the address identified above in Paragraph 4.

6.    I do not have any information as to the present addresses of RMRV's maternal aunt or grandmother.

7.    I have participated as a party in Chilean litigation concerning my rights-of-access to RMRV. The exhibits to my Petition For The Return Of A Child Under The Hague Convention On The Civil Aspects Of International Child Abduction set forth the relevant courts, case numbers, and dates of the child custody determinations by the Chilean courts, and I incorporate them in this declaration by reference.

8.   Other than the Chilean litigation set forth above, I do not know of any proceeding that could affect the current proceeding.

9.   I do not know of any person or institution not a party to the proceedings who has physical custody of RMRV or who claims rights of legal custody or physical custody of, or visitation with, RMRV.

10.  Ruiz and I were never married, but we had a romantic relationship together that resulted in the birth of RMRV in Chile.

11.  Ruiz and I separated in the year 2000 and, at that time, we came to an agreement in which RMRV would reside primarily with Ruiz, but with me having regular access to her. We also agreed that I would pay child support. I continue to pay child support.

12.  Since Ruiz left Chile with RMRV on or about December of 2003, Ruiz has not allowed me any access to my daughter whatsoever, whether by phone, email, or any other mode of communication, much less an opportunity to see her in person.

13.  Ruiz did not provide me with any notice of the date upon which she was planning to leave Chile with RMRV.

14.  When she left RMRV's native country of Chile, Ruiz did not provide RMRV with an opportunity to say goodbye to me, or to her paternal family, including her half-brother.

15.  In 2004, I was able to locate the U.S. phone number of Ruiz's spouse, Walter Jones, who kindly gave me the phone number of the house where RMRV and Ruiz were living in College Station, Texas and the times of day when I might be able to communicate with RMRV and Ruiz. Each of the four times when I called the number given to me by Mr. Jones at the time he suggested, Ruiz denied me an opportunity to speak with my daughter. Subsequently, Ruiz changed her phone number.

16.  I have contacted the Chilean consul in Houston to seek assistance in exercising my rights of access and to seek the return of RMRV to Chile.

17.  Ruiz requested that we communicate via email so that we could reach an agreement regarding my access to RMRV. Several months later, Ruiz notified me via a second email that she was going to deny me the possibility of having access to my daughter.

18.  While still in Chile, Ruiz became opposed to me visiting my daughter, which caused me to present a demand for the regulation of visits.

19.  Given that Ruiz has a long history of thwarting all of my efforts to communicate and visit with RMRV, I fear that there is a strong risk that Ruiz will stay in the United States with RMRV beyond the time authorized by the Chilean Court of

Appeals and that I will never be able to visit or communicate with my dear daughter again.

20.   Because Ruiz has repeatedly violated the court orders granting me access rights to RMRV, I have been forced to incur substantial expenses in an effort to enforce my rights. I continue to incur additional expenses, but to-date my documented expenses are USD $714, as more fully detailed in the attached *Exhibit A*. My actual expenses (including the opportunity cost of my time, and undocumented expenses such as notaries, telephone charges and Chilean attorney fees) are much higher – about USD $7,000. These amounts do not include attorney fees, court costs, etc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on the __09__ day of _____September_____, 2006.

_____
Oscar Manuel Reyes Pastén

## EXHIBIT A

| | |
|---|---|
| 3 trips to Valdivia from December 2003 to April 2004 | $ 74,000 |
| Demands for visits signed in October of the 2003 | $ 180,000 |
| Document translation by chancellery April 2005 | $ 118,273 |
| ChileExpress | $ 13,700 |
| Total (Pesos) | $ 385,973 |
| **Total (USD)*** | **$ 715** |

\* Conversion based on http://www.xe.com/ucc/ on 07-Sep-06; 1 CLP = 0.00185357 USD.

# EXHIBIT 2

# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

OSCAR MANUEL REYES PASTÉN,      )
                                )      C.A. No. _____
    Petitioner,              )
                                )
vs.                             )
                                )
FLAVIA CECILIA RUIZ VELÁSQUEZ,  )
                                )      **REDACTED**
    Respondent.              )

## REGISTRATION OF FOREIGN DETERMINATION OF ACCESS RIGHTS TO CHILD

Oscar Manuel Reyes Pastén ("Reyes") asks the Court to register the attached child custody determination documents in accordance with Section 30-3B-305 of the Code of Alabama, and shows the following:

1.    Reyes is the biological father of ██████████████ ("RMRV"),[1] a minor child. Reyes's current address is ██████████, San Felipe, Quinta Region, Chile.

2.    Flavia Cecilia Ruiz Velásquez ("Ruiz") is RMRV's biological mother. The Court must provide Ruiz with notice of this registration in accordance with Section 30-3B-305 of the Code of Alabama because she has custody of RMRV. On information and belief, Ruiz and RMRV reside at ██████████████ in Montgomery, Alabama.

3.    On October 30, 2003, the Juvenile Court of San Bernardo, Santiago,

---

[1] In accordance with General Order No. 2:04-mc-3228, the minor's full name is included in a sealed copy of this Registration filed with the Court, but is redacted in the publicly available version. The same procedure is followed for other personal data identifiers described in General Order No. 2:04-mc-3228. Only the minor's initials are used in the remainder of this Registration.

Chile issued an order granting Reyes access rights to RMRV. Two sets of true and correct certified copies of the October 30, 2003 order, and the official translation thereof, are attached as **Exhibits A and B**, respectively.

4.      On July 26, 2004, the Court of Appeals of Valdivia, Chile – a competent Chilean court with appropriate jurisdiction – issued a final order granting Reyes rights of access to RMRV. The July 26, 2004 order affirmed the rights of access granted to Reyes by the October 30, 2003 order. Two sets of true and correct certified copies of the July 26, 2004 order, and the official translation thereof, are attached as **Exhibits C and D**, respectively.

5.      In accordance with Section 30-3B-305 of the Code of Alabama, Reyes asks the Court to register the above-referenced Chilean court orders, and their official translations, in the State of Alabama.

6.      Reyes hereby declares under penalty of perjury that, to the best of his knowledge and belief, the attached Chilean court orders have not been modified.

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:_____
    Sylvia Mayer
    Texas State Bar No. 00787028
    Scott R. Dayton
    Texas State Bar No. 24007093
    Dolores Cavatore
    Texas State Bar No. 24027800
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:    (713) 546-5000
Facsimile:    (713) 224-9511

ATTORNEYS FOR OSCAR MANUEL
REYES PASTÉN

## VERIFICATION

I, Oscar Manuel Reyes Pastén, declare under penalty of perjury under the laws of the United States of America that the contents of the foregoing Registration Of Foreign Determination Of Access Rights To Child are true to the best of my knowledge, information and belief.

EXECUTED on the ____09___ day of _____Septiembre_____, 2006.

_____
Oscar Manuel Reyes Pastén

# EXHIBIT 2-A



I der Judicial
CHILE

REDACTED

*Materia : Autorización para salir del pais*

*Rola Nº 25.973*

San Bernardo, veintiocho de agosto de dos mil tres

VISTOS Y CONSIDERANDO:

I.- EN CUANTO A TACHAS

1º.- Que a fs. 95 y 96 la parte demandada dedujo tachas en contra de los testigos presentados por la actora, señalando que a ambas le afecta la causal establecida en el numeral séptimo del artículo 358 del Código de Procedimiento Civil; en efecto, doña Marta Zabaleta Mendoza declaró ser amiga de la madre demandante, a quien conoce desde chica, y por su parte, doña María José Santander declaró tener un juicio pendiente por lesiones en contra del demandado.

2º.- Que contestando el apoderado de la demandante señaló que la primera testigo no dijo tener una amistad intima, exigencia de la ley para que proceda la tacha, y en cuanto a la segunda testigo, alega que la circunstancia del legítimo ejercicio de acciones legales no supone necesariamente sentimientos de hostilidad en contra de quien se le presente, motivos por los cuales solicita el rechazo de las tachas deducidas.

3º.- Que si bien es cierto que la declaración de amistad de la primera testigo para con la demandante no ha sido calificada expresamente como de "intima", de sus propios dichos se infiere cierta cercanía e intimidad por la circunstancia de conocerla desde chica y además tener amistad con la madre de la actora, lo que extiende el espacio de afecto y de relación, motivo por el que se acogerá la tacha deducida en su contra. Respecto de la segunda testigo, resulta evidente que si ella mantiene juicio pendiente por lesiones en contra del demandado, se puede calificar este hecho de gravedad tal que permite acoger la tacha deducida en su contra.

II.- EN CUANTO AL FONDO

4º.- Que a fs. 14 doña Flavia Cecilia Velásquez Ruiz, casada, egresada de Geología, domiciliada en Bulnes Nº 623, San Bernardo, solicita se autorice a su hija ▓▓▓▓▓▓ de 4 años de edad, para salir del pais con destino a Estados Unidos en el mes de

 

REDACTED

Poder Judicial
CHILE

abril del presente año, pues fue invitada a participar en un post título de oceanografía a realizarse en la Universidad de Texas durante tres años y que el curso comenzará en agosto de 2003. Agrega que a pesar que se trata de un período de tres años, es su intención viajar a lo menos una vez al año a visitar a nuestros parientes en Chile y en especial para que su hija visite a la familia paterna.

Expresa que el padre de la niña, don Oscar Manuel Reyes Pastén, ingeniero electrónico, domiciliado en Maipú N° 10, San Felipe, quien trabaja en la mina CODELCO Andina División Los Andes, ubicada en Saladillo sin N°, quinta región, visita a su hija en vacaciones de invierno y de verano, sin exceder de dos semanas y estas visitas han sido producto de un acuerdo voluntario entre ellos, pues no existe demanda ni transacción a este respecto.

Agrega que la oportunidad que se le ha brindado es única pues sin esta invitación no podría haber realizado curso alguno, ni menos la especialización que se le ofrece, porque en Chile esa especialización no se da en ninguna universidad; además del beneficio en lo profesional, el curso traerá beneficios en el futuro pues podrá optar a mejores trabajos, mejorando la situación económica y la calidad de vida de ella y de su hija, aparte de tener nuevas experiencias, ampliar sus horizontes, conocer y vivir en una cultura del primer mundo, lo que será enriquecedor para ambas.

Acompaña a su demanda documentos relativos al curso ofrecido, además del certificado de nacimiento de la menor en el que consta que ▬▬▬▬▬▬▬▬ nació el ▬▬▬ ▬▬▬ 1998, que su filiación se encuentra determinada por ambos padres y que actualmente cuenta con 5 años de edad.

5°.- Que evacuando el traslado, en el primer otrosí de su escrito de fs. 28 el padre demandado plantea las siguientes observaciones: 1.- Que desde su nacimiento y luego después de la separación de las partes ocurrida en el año 2000, él se ha preocupado constantemente de la situación personal de la menor y que por retención de su sueldo paga mensualmente una pensión alimenticia a favor de su hija; 2.- Que en la medida de sus posibilidades por trabajar en sistema de turno en Minera Andina, visita a su hija, la trae a su domicilio y es así que durante el año 2002 la trajo en cuatro oportunidades, 20 días en febrero, todo el mes de abril completo, 13 días en julio y 12 días en diciembre, por lo cual no sólo él tiene una relación cercana y constante con la niña, sino que también su familia y especialmente sus padres; 3.- Que con el

Poder Judicial
CHILE

costo que ello implica, él ha visitado a su hija en los meses de mayo, junio y septiembre en Puerto Varas o Valdivia, al hogar de sus abuelos, y además ha costeado pasaje de la menor en avión o en bus, para que viajara junto a su madre; 4.- Que la madre de la menor contrajo matrimonio con un ciudadano extranjero, don Walter Brian Jones, por lo cual su vínculo con Chile se perderá existe fundado temor que no vuelva a Chile, con lo cual ya no podrá ver más a su hija y perderá el contacto y cercanía que él tiene con la menor, a pesar de los problemas que pone la madre; 5.- Que desde que se separaron, él ha podido ver a su hija sólo cuando la madre quiere, sin un criterio para ello, por lo cual debe estar a su disponibilidad, con constantes cambios a última hora de las fechas de visitas y que en un reciente viaje a Estados Unidos que realizó la madre por 20 días, él se enteró por parientes, en consecuencia que por esa fecha podría haber dejado a la menor a su cuidado; 6.- Que es falso lo expuesto en la demanda en cuanto al tiempo que él ve a su hija; 7.- Que las becas como la ofrecida a la madre, no imponen la obligación de volver al país y por ello no existe seguridad que la menor vuelva a Chile ni que pueda tener un régimen de visitas estable porque viajar a Estados Unidos no es lo mismo que viajar a Puerto Varas; Que le interesa seguir de cerca la educación y desarrollo de su hija, participar en la elección del colegio y educación, verla crecer y como padre, apoyarla en sus necesidades y carencias; 9.- Que la madre se encuentra embarazada con lo que deberá suspender el post grado que supuestamente va a realizar y deberá dedicar más atención a su nuevo hijo y a su cónyuge, lo que implica un menoscabo a la atención de su hija, lo que sumado al ambiente distinto e idioma desconocido, producirá un perjuicio irreparable para la niña; 10.- Que su hija le ha señalado que no tiene problemas de quedarse en Chile, viviendo en San Felipe, bajo su cuidado personal, preocupándose él de su educación y desarrollo integral, con otras actividades de su interés, como el ballet; 11.- Que finalmente, él sería feliz que la madre pueda realizar el estudio de post grado y en el período de tres años o más, él se quede al cuidado de su hija y en conjunto con su madre y abuelos maternos, regulen el régimen de visitas más apropiado para la menor.

Acompaña a su presentación certificado de matrimonio rolante a fs. 27, que acredita el matrimonio entre la demandante y don Walter Brian Jones, unión celebrada el 1° de febrero de 2003.

6°.- Que habiéndose deducido oposición, se citó a las partes a un comparendo cuya acta rola a fs. 42, y luego, dando curso progresivo a los autos se recibió la causa a prueba fijándose

Pode͠ Judicial
CHILE

(149)

*como puntos sustanciales, pertinentes y controvertidos los siguientes: 1°.- Frecuencia y modalidada de relacionamiento de la niña con el padre y 2.- Conveniencia para autorizar a la niña para salir del país.*

*7°.- Que la única prueba ofrecida por las partes en tiempo y forma es la siguiente documental:*

a) *Certificado de matrimonio de fs. 27 que da cuenta de la unión entre don Walter Brian Jones y doña Flavia Cecilia Velásquez Ruiz, celebrado el 1° de febrero 2003 en la ciudad de Puerto Varas.*

b) *Certificado rolante a fs. 55 otorgado por la psicóloga Sandra Bustamante en el que expone haber atendido a la pareja mientras estaba en crisis su relación y además de describir la situación que el señor Reyes presenta rigidez de pensamiento, intolerancia a las diferencias y respuesta verbal agresiva, lo que dificulta llegar a alternativas de solución, aportando para ello también las características de la Sra. Velásquez, quien se observaba temerosa,, incrédula, lábil emocionalmente, con alta inseguridad y estado de angustia agudo, todo lo cual conforma el síndrome de mujer maltratada.*

c) *Informe sicológico rolante a fs. 56, otorgado en el mes de mayo del presente año, a petición de la madre, en el que se da cuenta en lo pertinente a estos autos, que la niña ha aceptado la separación de sus padres, mostrando algunos rasgos de tristeza aunque no de necesidad de contar con su padre de un modo más frecuente; que la niña tiene un fuerte vínculo afectivo con su madre, de importancia vital en tanto el padre no aparece como figura parental significativa, que evita pensar o vivenciar en profundidad los temas relacionados con su padre, que ella conoce la forma como el padre trataba y trata a su madre, lo que la perturba y le produce temor, lo que podría significar un daño emocional secundario a la violencia intrafamiliar, sintetizando además el vínculo afectivo débil y precario entre el padre y su hija y por último, un adecuado autoconcepto y capacidades resilientes.*

*8°.- Que extemporáneamente el padre demandado ha agregado a estos autos un set de fotografías de la niña en diferentes edades, junto a su padre y a otras personas, además de, antecedentes relativos a viajes y visitas paternas a la menor de autos, en tanto la madre acompañó dos sendos informes sicológicos de la menor, documentos todos ellos que, si bien fueron agregados fuera del término probatorio, sólo serán una mera referencia a lo acreditado*




Poder Judicial
CHILE

en estos autos, de modo tal que su mérito deberá consistir únicamente en la refrendación o refutación de los demás antecedentes de este proceso.

9º.- Que a fs. 98 consta que con fecha 20 de junio del año en curso se procedió a realizar una audiencia de parientes en la que compareció doña María Etelvina Ruiz Campos, abuela materna de la niña y don Axel Norberto Saona Campos, tío abuelo de la menor, quienes en lo relativo a la materia de autos exponen: que madre e hija son muy unidas y no sería conveniente separarlas, que la madre va sólo por tres años a Estados Unidos y tal salida es ventajosa para la menor puesto que le brinda la posibilidad de un hogar estable junto a su madre, marido de ésta y el hermano que está por nacer; que el padre demandado visitaba a su hija sólo para vacaciones.

10º.- Que a fs. 110 se ha acompañado en estos autos informe social del demandado quien vive en San Felipe, y la profesional informa la frecuencia con que el progenitor ha visitado a su hija durante los años 2002 y 2003 y además concluye la conveniencia que en la situación de la menor de autos, se resguarde su derecho de mantener una relación directa y regular con el padre demandado, quien por lo demás no tendría inconveniente de quedarse con su hija durante el periodo en que su madre fuera a estudiar a Estados Unidos.

11º.- Que a fs. 117 rola en estos autos informe social respecto de la menor de autos y madre demandante, que en lo medular la profesional informa que se trata de una niña de 5 años, que vive con su madre en forma estable en la ciudad de Puerto Varas, que asiste a jardín infantil, que tiene claridad respecto de la figura paterna, que refiere que le gusta ir al hogar paterno en donde además comparte con su abuelita, quien es cariñosa y le prepara cosas ricas. En cuanto a la madre, señala que ésta debe viajar a Estados Unidos con la finalidad de reunirse con su cónyuge quien efectúa un doctorado en geoquímica y ella tiene la posibilidad de realizar un magister en geología marina en el mismo centro de estudios, que además presenta un embarazo con cinco meses de gestación y la menor se encuentra muy involucrada con el nacimiento de su nuevo hermanito y con su vida en familia, motivo por el cual concluye que sería conveniente acceder a la autorización de viaje, estableciendo algunos acuerdos con el progenitor para mantener el contacto y relación entre ambos.

12º.- Que de acuerdo a la certificación de fs.141, se tiene por acreditado que el progenitor cumple con su obligación legal y moral de proporcionar ayuda económica para la



Poder Judicial
CHILE

151

*mantención de su hija, cumpliendo con el pago de una pensión alimenticia ascendiente al 15 %*
*de sus ingresos, pagados mediante retención, según lo establece la sentencia definitiva dictada*
*con fecha 2 de diciembre de 2002 por el Segundo Juzgado de Menores de Concepción.*

*13°.- Que el tribunal llamó a las partes a una nueva audiencia de conciliación no*
*produciéndose acuerdo, ya que según se desprende del acta acompañada a fs. 122, la*
*demandante señala que se trata de un viaje de tres años de duración y ofrece que en ese período*
*la niña viaje dos veces por tres semanas cada vez, en compañía de su madre y en tales períodos*
*autorizar visitas con la supervisión de un adulto porque existen antecedentes fundados de*
*violencia intrafamiliar del padre hacia su hija; asimismo ofrece como garantía de cumplimiento*
*de los viajes, una fianza en dinero por un monto de $ 600.000. Por su parte el padre no acepta*
*que su hija salga del país porque no tiene seguridad que vuelva y él perdería todo tipo de*
*relación con su hija; que la madre no va auspiciada por organismo chileno que le exija su*
*regreso, sino que se trataría de una beca de un organismo norteamericano, el que no va a invertir*
*en un profesional para que éste regrese a Chile; que la madre se casó con un norteamericano y*
*está embarazada todo lo cual permite suponer su futura radicación fuera del país; que él ve*
*siempre a su hija, salvo los períodos en que tiene problemas con la madre, y ésta última le*
*impide el acercamiento a su hija; en cuanto a la fianza, señala que no existe monto posible que*
*pueda igualar la pérdida y el daño que puede significar para él y para su hija el separarse y*
*perder todo contacto; por todo lo expuesto, ofrece quedarse con la niña en caso que la madre*
*viaje a Estados Unidos.*

*14°.- Que de acuerdo a los antecedentes agregados a la causa, todos ellos apreciados en*
*conciencia, se tiene por establecido que la menor de autos es la única hija de ambas partes del*
*proceso, que nació el 19 de mayo de 1998 y en consecuencia actualmente tiene cinco años y tres*
*meses de edad, que la menor vive con su madre y mantiene una relación directa y personal con*
*su progenitor pero como ambos viven en diferentes ciudades, la frecuencia de estos contactos,*
*no obstante su irregularidad, es periódica toda vez que en las vacaciones de invierno y verano la*
*niña pasa períodos en el hogar paterno, y en las demás ocasiones es el padre quien viaja o va a*
*buscar a su hija para pasar con ella un tiempo. Se ha acreditado también que la madre*
*solicitante es casada con don Walter Brian Jones, ciudadano norteamericano y que ella desea*
*viajar a Estados Unidos junto a la menor de autos.*

Pod~ Judicial

CHILE

15°.- Que las demás probanzas consistentes en informes sicológicos de fs. 55 y 56 y los agregados extemporáneamente por la demandante a fs. 130 y 132, fueron emitidos con posterioridad a la demanda y petición de autos y en ellos las profesionales se pronuncian sobre los problemas de pareja, cuestión que no es materia de esta causa y en cuanto a la menor concluyen una precaria y débil relación entre padre e hija, sugieren que el padre es el causante de cierto estado de transtorno de la niña y por ello se recomienda la supervigilancia en las visitas. Los informes agregados acusan cierta parcialidad en sus apreciaciones clínicas, toda vez que se atribuye responsabilidades unilaterales y no se considera la dinámica propia del conflicto familiar en donde muchas veces los intereses contradictorios de las partes los lleva a una polarización y a una agudización del problema; no distinguen las profesionales los conflictos de adultos de aquellos que la niña pueda tener con su padre, y no se exponen hechos que expliquen la existencia de problemas entre padre e hija, y tampoco se desprenden indicadores serios para restricciones del contacto paterno.

16°.- Que a mayor abundamiento, en la presente causa no se ha alegado la eventual mala relación paterno-filial, sino que por el contrario, la actora reconoce que el padre vive en la V región y pese a ello la niña lo visita en vacaciones de verano y de invierno, y en consecuencia, los informes emitidos con poesterioridad a la demanda de autos, se aprecian completamente sesgados en su relato, conclusión y sugerencia. En efecto, se puede desprender que si efectivamente la menor está siendo actualmente afectada, ello corresponde a la disputa que existe entre sus padres, quienes presentan posiciones antagónicas, las que posiblemente se han agudizado en el trancurso de la tramitación de la presente causa, siendo inevitable que de tales diferencias resulte la menor afectada por la tensión, comentarios y actitudes de los adultos. Ello queda claramente reflejado en la declaración de la propia niña, quien se ve triangularizada entre sus padres, pero formando alianza con la madre, con quien vive, según se analizará más adelante.

17°.- Que las relaciones parentales, los vínculos afectivos y el relacionamiento filial son elementos básicos para el sano desarrollo de todo niño, y desde un punto de vista jurídico, según lo establecen los artículos 7 y siguientes de la Convención de derechos del niño, la relación parental constituye un elemento del derecho de identidad, de modo que si los padres viven separados, tanto el Derecho internacional cuanto el Derecho interno se encargan de regular la relación personal y contacto directo del niño con aquel de los padres con quien no

Poder Judicial
CHILE

13

vive, y al efecto la autorización para salir del país es un mecanismo legal que opera en garantía del ejercicio de este derecho del niño.

18°.- Que al respecto el artículo 49 de la ley de menores señala que son los padres quienes deben autorizar a su hijo para salir del país, y sólo en el caso que no pudiere otorgarse o sin motivo plausible se negare la autorización por aquél de los padres que deba prestarla, será el juez quien la otorgue, tomando en consideración el beneficio que le pueda reportar al niño y señalando el tiempo por el que se concede la autorización.

19°.- Que corresponderá entonces en primer término, analizar los motivos expresados por el padre demandado, los que resultan completamente plausibles toda vez que su negativa se fundamenta en el hecho que él no quiere perder el contacto con su hija, que quiere participar de su desarrollo y formación, que le preocupa e interesa la crianza de su hija, mantener el vínculo afectivo con ella y por último, manifiesta su temor que de autorizarse la salida, su hija no regrese al país, de lo que se seguiría un perjuicio para él y para la niña.

20°.- Que aún cuando los motivos expresados por el padre resultan plausibles en orden a que resguardan un derecho personal de la más alta jerarquía, establecido tanto en su beneficio como en el de su hija, visto de otra perspectiva, es legítimo también que si la actora contrajo matrimonio con un ciudadano norteamericano, esta nueva familia desee establecerse en Estados Unidos junto al hijo que está por nacer, sin excluir de este panorama familiar a la menor de autos.

21°.- Que no obstante lo anterior, la demandante refiere como único motivo del viaje proyectado, la realización de un curso de perfeccionamiento, hecho que va solamente en beneficio de la actora y si bien se trata de una óptima posibilidad desde el punto de vista del desarrollo personal y profesional, se debe tener presente que la obtención o cumplimiento de una aspiración tan personal debe ser compatible con los intereses y derechos ajenos, especialmente en este caso con los de su propia hija.

22°.- Que no obstante lo anterior, si el motivo subyacente fuera lograr la reunión familiar y específicamente, que la madre se pueda reunir con su cónyuge, ciudadano norteamericano que vive en Texas, este legítimo anhelo podría hacer variar sustantivamente los presupuestos de la petición materna, la proyección de regreso de la menor a nuestro país, y por



P‾der Judicial
CHILE

ende, la seguridad del manteniemiento de las relaciones parentales y el ejercicio del derecho de relación de la niña con su padre, temor expresado por el progenitor.

23°.- Que por otro lado y en relación a la menor de autos, en esta causa se ha dado cumplimiento a lo dispuesto en el artículo 12 de la Convención de derechos·del niño, y en consecuencia se oído a la niña, quien en lo relativo a la materia de autos y según consta a fs. 23, manifestó que a su papá lo ve poquito, que la verdad es que el papá la molesta a ella y a la mamá, que va a viajar a Estados Unidos y van a volver, que no va a echar de menos al papá porque es pesado y que tiene un hermano mayor que ella y que vive en San Felipe.

24°.- Que la opinión expresada por los niños deben ser tomada debidamente en cuenta en función de la edad y madurez, y en este caso, tratándose de una niña de cuatro años al momento de declarar, se desprende de sus dichos que ella experimenta cierta alianza con su madre al señalar que el papá las molestaba a ambas, sin expresar la forma en que lo hacia.  También se percibe en la niña un compromiso e interés en los planes de viaje, lo que resulta natural por ser ello un programa familiar, a realizarse junto a su madre.  Sin embargo, de su expresión "no voy a echar de menos a mi papá porque es pesado" esta sentenciadora puede presumir que la menor fue preparada en su declaración, ya que no resulta coherente ni comprensible que a la edad de la niña y a su desarrollo cognitivo, ella se proyecte en el tiempo y concluya la ausencia o presencia de determinados sentimientos, y más aún, se refiera en términos categóricos que su papá es pesado, expresiones todas ellas que por carecer de referencia a hechos precisos o motivos que las expliquen y por no estar correspondidas con lo expresado por la Asistente social en relación a la niña y con los demás antecedentes del proceso, se deberán desestimar.

25°.- Que el derecho del niño a ser oído no significa que los adultos deban cumplir lo que el menor quiera, ya que por un lado, por su edad y condición afectiva, puede ser vulnerable a emitir opiniones y juicios conforme los deseos del adulto con quien vive, y por otro, porque les corresponde en primer lugar a los padres, y luego las autoridades que deban pronunciarse sobre el ejercicio de sus derechos, resolver según su conveniencia, lo que importa en la especie mantener el relacionamiento filial con ambos padres, debeindo éstos generar las condiciones afectivas y animicas en su hijo para el sano concepto de cada uno de sus padres.

26°.- Que por otra parte y en cuanto a los eventuales beneficios del viaje, en este sentido las alegaciones de las partes son muy distante y contradictorias, y si bien ambas posiciones

Po er Judicial

CHILE

*resultan legítimas y comprensibles, desde la perspectiva de la niña, se presume que de ser autorizada para salir del país en un viaje tan proplongado, con tan escasas posibilidades de contacto con su padre, necesariamente ello traerá como consecuencia un desarraigo de su país, un grave distanciamiento con su familia de origen y ciertamente un olvido de la figura paterna, quedando la menor con una red de apoyo familiar disminuida y vulnerándose de paso su derecho a mantener una relación personal y contacto directo con su progenitor.*

*27°.- Que se ha argumentado en la causa que el viaje representa para la menor ciertos beneficios como, vivir en un país desarrollado, con otra cultura, aprender otro idioma, etc., argumentos que deberán ser desestimados por ser apreciaciones y valoraciones subjetivas y que en todo caso en la edad, etapa de desarrollo y situación evolutiva en que se encuentra la niña, ellos no constituyen beneficios ni intereses que contribuyan a un desarrollo armónico; más bien a los cinco años se requiere de arraigo e identificación con la familia y el entorno, por ser todo ello necesario para la construcción de su propia identidad.*

*28°.- Que en efecto, el beneficio mayor de la niña es mantenerse en un hogar seguro, junto a sus padres y familiares más directos, pero ello no es posible y más aún, la situación de su madre necesariamente la enfrenta a la disyuntiva de vivir con ella alejándose de su padre, o viceversa, que su madre viaje sola, sin ella, y en ambos casos produciéndosele una pérdida familiar y afectiva importante.*

*29°.- Que si se tiene en consideración que la autorización de salida del país solicitada al tribunal corresponde únicamente a lo expresado por la madre, esto es, la realización de un curso de post título de Oceonografía a realizarse en la ciudad de Texas, por tres años comenzando en agosto de 2003, tal cantidad de tiempo resulta excesiva ya que, de acuerdo a la edad y estado de desarrollo de la menor de autos, la vivencia y medición del tiempo de un niño en formación es completamente diferente al del adulto, y en el caso de autos, el acoger integramente la pretensión de la demandante expone seriamente la relación paterno filial, lo que en la especie debe ser cautelada en estos autos.*

*30°.- Que no obstante lo anterior, y aún cuando por un lado se han estimado plausibles los argumentos de oposición, y por otro, la madre no ha ofrecido una caución suficiente que permita asegurar o presumir un cumplimiento efectivo del ejercicio del derecho de visitas del padre, de igual modo se deberá resolver compatibilizando los intereses y pretensiones de ambas*

REDACTED

*partes, resguardando los derechos de la menor y evitando sus eventuales pérdidas y desarraigos afectivos, procurando reforzar su relación paterna y su permanencia con la madre.*

*Por estas consideraciones y de conformidad a lo dispuesto en los artículos 7 y siguientes de la Convención de derechos del niño, artículos 34, 36 y 49 de la ley 16.618, artículos 160, 171, 262, 356 y siguientes y 689 del Código de Procedimiento Civil, se resuelve:*

*I.- Que se acogen las tachas deducidas a fs. 95 y 96*

*II.- Que se acoge la solicitud de autorización para salir del país interpuesta a fs. 14, en el sentido que la menor de autos* [REDACTED] *podrá viajar a Estados Unidos, Texas, junto a su madre, doña Flavia Cecilia Velásquez Ruiz, durante el segundo año del curso de Post título que ésta realizará en ese país, esto es, sólo por el periodo de* ***UN AÑO, DESDE AGOSTO DE 2004 HASTA JULIO DE 2005.***

*III.- Que sin que importe una condicón y sólo para dar cumplimiento a lo precedentemente resuelto, previo a hacer efectiva la salida del país de la menor de autos, la madre deberá acreditar haber cursado el primer año del curso de post título de oceonografía a realizarse en la Universidad de Texas, Estados Unidos.*

*IV.- Que la presente autorización no habilita para que la menor de autos sea adoptada en el extranjero.*

*Notifíquese, regístrese, y en su oportunidad, archívese.*

*DICTADO POR DOÑA ALBA LLANOS MELUSSA, JUEZ TITULAR*

*AUTORIZADO POR DOÑA AMALIA FERNANDEZ MARTINEZ, SECRETARIA SUBROGANTE*

San Miguel, treinta de octubre de dos mil tres.

Vistos y teniendo presente:

**PRIMERO:** Que no habiéndose acreditado la existencia de alguna inhabilidad por parte de la madre para el ejercicio del cuidado personal de la niña, la que es una menor de cinco años de edad quien ha permanecido con su madre desde la época del nacimiento, y encontrándose vinculada afectivamente a ésta, la que le ha otorgado todo el cariño, atención y preocupación que ésta requiere, todo ello en el núcleo de una familia debidamente constituida, la que incluso se ha visto aumentada recientemente con el nacimiento de una hermana, razón por la cual no aparece conveniente para el interés superior de la niña separarla de su madre en la forma establecida en el fallo que se revisa.

**SEGUNDO:** Que para todo niño es fundamental mantener una estabilidad emocional para con sus padres biológicos, la cual sólo se logra mediante el afecto y contacto con ambos padres, en el caso de autos para que el padre pueda ejercer su derecho-deber de visitar a su hija y cooperar en la educación y crianza de ésta se hace necesario la regulación del referido derecho, debiendo normarse el establecido convencionalmente entre las partes, esto es, en el periodo de vacaciones que la menor tenga en el país donde su madre residirá, sin perjuicio de otros derechos que la parte demandada solicite en su oportunidad.

**TERCERO:** Que del mérito de los antecedentes, se desprende que el padre de la menor no puede limitar el derecho a desarrollarse profesionalmente a la madre, más aún si tal perfeccionamiento implicará beneficios futuros para la menor de autos.

Y visto, además, el mérito de los antecedentes y de conformidad con lo dispuesto en el artículo 37 de la Ley Nº16.618 sobre menores y 225 del Código Civil, SE CONFIRMA la sentencia apelada, l

veintiocho de agosto del año en curso, escrito de fojas 146 a 156, con **declaración** que se acoge la solicitud de autorización para salir del país respecto de la menor ████████████████ quien podrá viajar a Estados Unidos, Texas, junto a su madre doña Flavia Cecilia Velásquez Ruiz, durante los tres años que dure el curso de post-título que ésta realizará en dicho país.

Lo anterior, es sin perjuicio de lo señalado en el considerando segundo del presente fallo, respecto al régimen de visitas del padre de la menor don Oscar Manuel Reyes Pasten.

Regístrese y devuélvase.

N°1297-2003.



Pronunciada por las Ministros señora Carvajal, señora Letelier y la Abogado Integrante señora Montt.  Autoriza el señor Raúl Molina, Secretario Titular.

original,que se tuvo a la vista.- SAN BERNARDO, 09 de agosto

del 2004.-



MARIA ESTER CASTILLO GRANDON

SECRETARIA TITULAR

**CERTIFICO** que la firma que antecede corresponde a la de

doña **MARIA CASTILLO GRANDON.** Secretaria Titular del

Juzgado de Letras de Menores de San Bernardo. Santiago, dos

de marzo de 2005.

CARLOS A. MENESES PIZARRO

SECRETARIO

CORTE SUPREMA

El Ministerio de Justicia de Chile
Certifica la autenticidad de la firma de
don Carlos Meneses

Santiago, 02 MAR. 2005

VERONICA LAGOS FRAGA
Oficial de Legalizaciones

Legalizada en el Ministerio
de Relaciones Exteriores de Chile
Firma del Señor

MANUEL VERDEJO M.
Oficial de Legalizaciones

-2 MAR 2005

MINISTERIO DE RELACIONES EXTERIORES
CHILE

Traducción Oficial [X]    Auténtica [ ]
Ejemplares.............    Idioma.........

0 2 MAR. 2005

Plazo Normal [ ]  Urgente [ ]   Extra-urgente [ ]

Nº 05/1667

# EXHIBIT 2-B

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

REDACTED

## OFFICIAL TRANSLATION

Under the oath prescribed by article sixty-three of the Code of Civil Procedure of the Republic of Chile, I do hereby certify that the following translation from the Spanish original numbered 05/1667 is genuine. ------------------------------------
-------------------- RUBRICATO NE VARIETUR --------------------

 

## COURT JUDGMENT

---------- The document whereof the translation follows hereinbelow is a certified true photocopy of a COURT JUDGMENT, issued in the Spanish language, signed; authorized and legalized according to Chilean laws, and reads as follows: ---------------
---------- One hundred and forty-six (146) --------------------
---------- THE JUDICIARY ------------------------------------
---------- CHILE --------------------------------------------
---------- Minor: ███████████ --------------------------------
---------- In the Matter of: Authority to Exit the Country ----
------------------------------------------------------- // -

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 2.

- // -------------------------------------------------------------

---------- Roll No. 25,973 -------------------------------------

---------- San Bernardo, August twenty-eight, two thousand and
three. -----------------------------------------------------------

---------- HAVING REGARD TO: ----------------------------------

---------- I. AS TO OBJECTIONS --------------------------------

---------- 1.- That on page 95 and 96, the defendant party
objected the witnesses submitted by the petitioner by stating
that they are both under by the ground established by number
seven, Article 358 of the Code of Civil Procedure; indeed, Ms.
Marta Zabaleta Mendoza declared that she is a friend of the
petitioner whom she has known since she was a child and, on her
part, Ms. María José Santander declared to have a pending
lawsuit against the respondent for injuries. --------------------

---------- 2. That in his reply, the counsel of the petitioner
stated that the first witness did not mention having a close
friendship, which is required by law to admit the objection, and
as to the second witness, he claims that the fact of the lawful
exercise of legal actions does not necessarily imply hostile
feelings against the person being sued, therefore he requests
the refusal of the filed objections. ---------------------------

---------- 3. That although it is true that the declaration of
friendship of the first witness with the defendant has not been
qualified as "close", her own words indicate a certain closeness
and intimacy by reason of her knowing her since her childhood in
addition to being friends with the petitioner's mother, which
expands the scope of affection and relationship, by reason of
which the objection against her will be admitted. As regards the
second witness, it becomes evident that if she has a pending

REDACTED

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667     P. 3.

- // --------------------------------------------------------

lawsuit against the respondent for injuries, this fact is regarded as so serious that the objection is admitted. --------- ---------- II. AS TO THE SUBSTANCE: --------------------------- ---------- 4. That on page 14, Ms. Flavia Cecilia Velásquez Ruiz, married, geology graduate, domiciled at Bulnes No. 623, San Bernardo, has requested a permit for her 4-year-old daughter ███████████████████████ to exit the country bound for the United States of America in the month of April of the present year, as she was invited to take part in the three year Oceanography postgraduate program to be conducted in Texas and that the course is to begin in August 2003. She adds that, although such course takes three years, it is her intention to travel to Chile at least once a year to visit some relatives and particularly for her daughter to visit her paternal family. ---- ---------- She states that her daughter's father, Mr. Óscar Manuel Reyes Pastén, an electronic engineer domiciled at Maipú No. 10, San Felipe, who works for the Andina Division of Codelco Mine in Los Andes, located at Saladillo N/N, Firth Region, visits her daughter for the winter and summer vacation no more than two weeks and that these visits have been made upon the voluntary agreement between them, as there are no claims or settlements in that regard. ------------------------------------ ---------- She adds that the opportunity being given to her is unique since without this invitation she would have been unable to conduct any course whatsoever, let alone the specialization she is being offered because that specialization is not taught at any university in Chile. In addition to the professional growth, the course will give her other benefits as she may apply

REDACTED

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667    P. 4.

- // ----------------------------------------------------------

for better jobs thus improving her economic condition and
standard of living (her own and her daughter's), apart from
living new experiences, expanding her horizon, getting to know
and living in a first world culture, which will enrich them
both. ------------------------------------------------------------

---------- Her petition is accompanied with documents relating
to the offered course in addition to the birth certificate of
the minor, which evidences that ███████████████ was
born on █████, 1998, that her registration has been entered by
both parents and that she is currently 5 years old. ------------
---------- 5. That in reply to the service of process on him,
the defendant father has, in the first additional petition of
his submission, made the following remarks: 1. That ever since
his daughter was born and after the separation of the parties in
2000, he has always concerned for the minor and that he is
withheld from his salary a monthly maintenance allowance in
favor of his daughter ; 2. That to the extent of his
responsibilities and as he works with a system of shifts in the
Andina Mine, he visits his daughter, brings her home and that in
2002, he brought her home 4 times; 20 days in February, the
whole month of April, 13 days in July and 12 days in December;
therefore, not only does he have a close and constant relation
with his daughter, but also his family and particularly his
parents. 3. That despite the cost therein involved, he has
visited his daughter in Puerto Varas or Valdivia, the home of
her grandparents, in the months of May, June and September and,
in addition, he has afforded the air or bus ticket of the minor
to travel with her mother. 4. That the minor's mother has

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667     P. 5.

- // ----------------------------------------------------------

married a foreign citizen, Mr. Walter Brian Jones, and
accordingly, her bond with Chile will disappear; therefore,
there are sufficient grounds to believe that she might not
return to Chile and thus he will not see his daughter anymore
and will lose the contact and closeness he already keeps with
the minor despite his problems with her mother. 5. That ever
since they separated, he has been able to see his daughter only
when her mother wants him to, without a criterion so he has to
depend on her availability with constant last-minute changes of
the visitation dates and that on a recent 20 day's trip of the
minor's mother to the United States, he only learnt from some
relatives, while she might have left the minor under his care.
6. That the statement that he sees his daughter only a short
time is false. 7. That the scholarships like the one offered to
the minor's mother do not impose the obligation to return to the
country and, therefore, there is no certainty that the minor
returns to Chile nor that he may have a permanent visitation
right since traveling to the United States in dot the same as
traveling to Puerto Varas. That he is interested in closely
following up the education, development of his daughter,
participate in the election of a school and education, see her
grow as a father and support her needs and shortages. 9. That
the minor's mother is pregnant so she will have to put off the
postgraduate course she is allegedly going to take and shall
have to dedicate more time to her new child and husband, which
implies a detriment to the attention of her daughter, which
adding up to the different environment and unknown language,
will bring about an irreparable damage to the minor. 10. That

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667    P. 6.

- // -------------------------------------------------------------

his daughter has told him that she has no problem to stay in Chile living in San Felipe under his personal care, with him taking care of her education and integral development, with other activities of her interest like ballet. 11. That, finally, he would be happy in the minor's mother would carry out the postgraduate course for three or more years while he takes care of his daughter and, along with the child's mother and maternal grandparents regulate the visitation rights most appropriate for the minor. -------------------------------------------------------
---------- He adds to his submission a marriage certificate entered on page 27, which evidences the marriage between the petitioner and Mr. Walter Brian Jones, celebrated on February 1, 2003. ------------------------------------------------------------



---------- 6. That since an opposition was filed, the parties were summoned to a hearing, the records of which are entered on page 42, and giving a progressive course to the proceedings, the case was admitted for the reception of evidence, setting the following substantial, relevant and disputed items: 1. Frequency and manner in which the minor relates with her father and 2. Convenience of Authorizing the minor's exit from the country. --
---------- 7. That the only proof submitted by the parties is the following documents evidence: ------------------------------
---------- a) Marriage Certificate on page 29 which evidences the marriage between Mr. Walter Brian Jones and Ms. Flavia Cecilia Velásquez Ruiz, celebrated on February 1, 2003, in the City of Puerto Varas. --------------------------------------------
---------- b) Certificate entered on Page 55 issued by Psychologist Sandra Bustamante, who states that she provided

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 7.

- // ----------------------------------------------------------

assistance to the couple while their relationship was in crisis
in addition to describing that Ms. Reyes was narrow-minded,
intolerant to differences and aggressive verbal response, which
prevents from reaching solution alternatives, which was enhanced
by the characteristics of Ms. Velásquez who looked scared,
distrustful, emotionally labile, with high uncertainty and
subject to a state of acute anguish, what conforms a syndrome of
abused wife. -------------------------------------------------------
---------- c) Psychological report on page 56, issued in the
month of May of the present year, at the request of the minor's
mother, which reveals, as regards these proceedings that the
child has accepted the separation of her parents, showing some
traits of sorrow although not the need to have her father
frequently by her; that the child has a strong affective
relationship with her mother, being of vital importance, while
the father does not appear as a significant figure, that she
avoids thinking or experiencing the issues concerning her
father, that she knows how her father used to treat and still
treats her mother, which disturbs and causes her fear, which
might involve an emotional damage secondary to domestic
violence, in addition to synthesizing the weak and precarious
affective bond between the father and his daughter, and
eventually, and adequate self concept and resilient capacities.
---------- 8. That the defendant father has extemporaneously
added to these proceedings a set of photographs of the child at
different ages along with her father and other people, in
addition to information on trips and paternal visits to the
minor, while the mother submitted a couple of psychological

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667    P. 8.

- // ----------------------------------------------------------

reports on the minor, which documents, although added at the end of the discovery period, will only be a mere reference to the facts of these proceedings, thus their merit will only consist in ratifying or denying the other grounds of this matter; ------ ----------- 9. That on page 98, it is evidenced that on June 20 of the present year, a hearing took place with some relatives, including Ms. María Etelvina Ruiz Campos, maternal grandmother of the child and Mr. Axel Norberto Campos, grand-uncle of the minor, who stated on this matter that mother and daughter are very close to each other and it would not be convenient to separate them; that the mother is going to the United States for three years only and that such exit would be advantageous for the minor as she will be given the opportunity to having a stable home with her mother, her mother's husband and the sibling who is about to be born; that the minor's father would visit her on vacation only. ------------------------------------ ---------- 10. That on page 110, a social report has been submitted on the respondent in this matter, who lives in San Felipe, where the professional informs that the father has visited his child during the years 2002 and 2003 and concludes on the convenience that the right of the subject minor to keep a regular and direct relation with the respondent father be safeguarded; that otherwise the father would have no inconvenience to keep his daughter for the time the mother studies in the United States. ------------------------------------ ---------- 11. That page 117 contains a social report on the subject minor and the petitioner mother, the core of which informs that it is a 5-year-old girl who lives permanently with

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 9.

- // --------------------------------------------------------

her mother in the city of Puerto Varas, that she attends a day
care and that she has a clear mind regarding her paternal
figure; that she has said that she enjoys going to her father's
home where she also shares with her grand mother, who is loving,
and prepares delicious things. As to her mother, she states that
she has to travel to the United States in order to join her
husband who is doing a doctoral course on geochemistry and she
has the possibility of doing a master on marine geology at the
same center, who in addition has a five-month pregnancy and the
minor is very involved with the birth of her little brother and
with her life in family, reason by which she concludes that it
would be convenient to agree to the travel authorization,
establishing some agreements with the father to keep the contact
and relation between them. -------------------------------------
---------- That according to a certification on page 141, it
has been proven that the father has complied with his legal and
moral obligation to provide financial support to the maintenance
of the minor, keeping a maintenance allowance amounting to 15%
of his income, which is withheld from his salary, in compliance
with the final judgment rendered on December 2, 2002, from the
Second Juvenile Court of Concepción. --------------------------
---------- 13. That the court summoned the parties to a new
settlement hearing, with the parties reaching no agreement,
since as shown by the record entered on page 122, the petitioner
states that it is a three year trip and offers that during such
period the girl travels twice for three weeks each in company
with her mother and during those periods, to authorize visits
under the supervision of an adult, since there are well-grounded

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 10.

- // ---------------------------------------------------------

facts of domestic violence on the part of the father toward his
daughter. Likewise, she offers an amount of Ch$600 as a security
for the compliance of her trip. On his part, the father does not
accept the exit of the minor from the country as he has no
certainty that she returns and he would lose any contact with
his daughter; that the mother is not traveling under the
auspices of a Chilean organization that compels her to come
back, but it is a scholarship given by an American agency which
would not invest in a professional for her to eventually return
to Chile; that the mother got married to an American citizen and
is pregnant, all of which leads to assume that she will settle
outside the country; that he always sees his daughter, except
for those times when he has problems with the minor's mother,
who prevents her from seeing his daughter; as to the security,
he states that there is no possible amount that could compensate
the loss and damage that separating him from his daughter and
losing any contact with her would cause him; for all these
considerations, he offers to stay with the child in case her
mother travels to the United States. ---------------------------
---------- 14. That according to the facts submitted to the
case, all of which have been conscientiously appraised, it has
been established  that the subject minor is the only daughter of
both parties to these proceedings, that she was born on May 19,
1998 and is currently 5 years and three months old; that the
minor lives with her mother and keeps a direct, personal
relation with her father but as both live in different cities,
the frequency of these contacts, regardless of their
irregularity, is periodical, as the minor spends some time in

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667    P. 11.

- // ----------------------------------------------------------

the winter and summer vacation in the paternal home and at other
times it is the father who travels or picks up his daughter to
spend some time with her. It has also been accredited that the
requesting mother is married to Mr. Walter Brian Jones, a United
States citizen, and that she is willing to travel to the States
with the subject minor. ---------------------------------------
---------- 15.    That    the    other    evidence    consisting    of
psychological reports on pages 55 and 56, and those submitted
extemporaneously by the petitioner on pages 130 and 132, were
issued subsequently to the claim and petition of this matter and
in those reports, the professionals pronounce themselves on
their problems as a couple, which is not the subject matter of
this claim and as to the minor, they conclude that she keeps a
weak and precarious relationship with her father; they suggest
that the father is the originator of a certain condition of
distress towards the child and, therefore, they recommend
supervised visits. The submitted reports evidence some kind of
biased clinical appreciation, as responsibilities are attached
to one side only with no regard to the very dynamics of the
family conflict where at several times the conflicting interests
of the parties lead them to a polarization and worsening of
their problem; the professionals do not distinguish the problems
of the adults from those the child might have with her father,
and no facts are mentioned that might explain the existence of
problems between the child and her father, nor serious features
to impose restrictions to the paternal contact. ----------------
---------- 16. That, in addition, in this case there has not
been challenged the possible bad relation between father and

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 12.

- // -----------------------------------------------------------

daughter but, on the contrary, the petitioner admits that the
father lives in the V Region and despite that, the child visits
him during the summer and winter vacation and, therefore, the
reports issued after the instant claim look entirely biased as
to the statements, conclusions and suggestions. Indeed, it may
be inferred that if the child is actually being affected, that
is because of the dispute existing between her parents, who
present disputing positions, which have possibly worsened in the
course of these proceedings, it being unavoidable that after
such differences, the minor is affected by the tension, comments
and attitudes of the adults. That is clearly reflected from the
statement of the very child who is in the middle of both parents
but forming an alliance with her mother with whom she lives as
hereinafter analyzed. ------------------------------------------

---------- 17. That parental relations, affective links and
family relationship are basic elements for the healthy
development of any child and, from the juridical point of view,
the parental relation constitutes an element of the right to
identity; therefore, if the parents live apart, both the
international law and domestic law ensure the regulation of
personal relations and direct contact of children with their
parents with whom they do not live and, to that effect, the
authorization to exit the country is a legal mechanism that
safeguards the exercise of this right of children. -------------

---------- 18. That in that respect, article 49 of the Juvenile
Law states that parents are entitled to authorize the exit of
their children from the country and, only in case that permit
cannot be given or is unreasonably withheld by such parent who

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 13.

- // ------------------------------------------------

is supposed to give it, it will be the court who grants such permit, taking due account of the benefit that can be brought about to the minor and with a statement of the time for which authorization is to be granted . ------------------------------

---------- 19. That it is then appropriate to consider the grounds expressed by the defendant father, which are fully admissible since his denial has to do with the fact that he is not willing to lose contact with his daughter, that he wants to be involved in her personal development and education, that he is concerned with an interested in her raising and upbringing, in keeping the affective link with her and, finally, he states his fear that, if he authorizes the exit of his daughter she might not return to the country, what would entail a detriment to him and his daughter. ------------------------------------

-------- 20. That even though the reasons expressed by the father appear to be reasonable in order to safeguard a personal right of the highest status, established both in his own and his daughter's interest, if seen from another perspective, it is also legitimate that if the petitioner got married to a United States citizen, this family wishes to settle in the United States along with a child who is about to be born, without excluding the subject child from this family scenario. ---------

---------- 21. That despite the foregoing, the petitioner refers to the conduction of a training course as the only reason of her trip, which is in the sole interest of the petitioner and, although it is a great possibility from the personal and professional point of view, it should be borne in mind that the attainment or accomplishment of such a personal aspiration

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667   P. 14.

- // ------------------------------------------------------------------

should be consistent with the interests and rights of others, especially in this case, where the rights of her own daughter are involved. ------------------------------------------------------

---------- 22. That, notwithstanding the foregoing, if the underlying reason were to achieve the family reunion and specifically that the mother can join her husband, a United States citizen who lives in Texas, this legitimate aspiration might vary substantially the assumption as to the pother's petition, the prospects for return to our country and, accordingly, the certainty of keeping the parental relations and the exercise of the rights of the child to relate with her father, which fear has been expressed by him. ------------------

---------- 23. That on the other hand, and in relation to the subject minor, this court has fully complied with the provisions of article 12 if the Convention on the Rights of Children and has, therefore, heard the child who has, in connection with the instant case, and as shown on page 23, she stated that she sees her father only a little, that her father harasses her and her mother about traveling to the United States and that they should come back; that she does not miss her father because he is mean and that she has an elder brother who lives in San Felipe. -----

---------- 24. That children's opinions have to be taken into account in terms of their age and maturity and as this was a four-year-old child, at the time when she declared, it is inferred from her statements that she has a certain alliance with her mother by saying that her father harassed them both, without expressing the way in which he did so. It is also perceived in the child a commitment and interest in the

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 15.

- // --------------------------------------------------------

traveling plans, which is natural as that is a family program to
be carried out in conjunction with her mother; however, from her
expression "I'm not gonna miss my father because he is mean",
this ruler may assume that the minor was prepared in her
statement, as it is not coherent or understandable that at the
child's age and given her cognitive development, she can project
herself in time and conclude on the absence or presence of a
certain feeling, and furthermore, that she refers to her daddy
being mean in such categorical terms all these are expressions
which by lacking a reference to precise facts or reasons to
explain the same and because they are not consistent with the
statement of the social worker in her report on the child and
with the other facts in these proceedings, they are dismissed.-
---------- 25. That the right of the minor to be heard does not
mean that adults should do what minors want, since on the one
side, given their age and affective condition, they can be
vulnerable to say opinions or statements according to the wishes
of adults with whom they live and that, on the other side,
because it is the parents at first and then the authorities who
are entitled to pronounce on the rights to resolve on the
convenience, what counts in the instant case is to keep the
loving relationship with both parents, they being responsible
for generating the affective and behavioral conditions in their
children for their healthy concept about each parent. ----------
---------- 26. That on the other hand, and in connection with
the prospective benefits of the travel, in this connection the
allegations of the parties are too different and contradictory
and, although both positions are genuine and understandable,

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 16.

- // ----------------------------------------------------------

from the point of view of the child, if authorize to exit the country in such a long trip with scarce possibilities to have contact with her father, that will necessarily bring about a detachment from her roots, a serious separation from her family of origin and the concurrent oblivion of the paternal figure, the minor having a weakened family protection network, thus undermining her right to keep a personal relationship and a direct contact with her father. ------------------------------
---------- 27. That it has been claimed in the instant case that the minor's travel represents cert5ain benefits like living in a developed country, with another culture, learning another culture, etc. which arguments are dismissed because they represent subjective appreciations and valuations and which, at any rate, given the age, developmental stage and evolutive situation of the minor do not constitute benefits or interests that contribute to the harmonious development, but rather, at the age of five years, it is required a rooting, an identification with the family and with the environment, as all that is necessary for building up her own identity. ------------
---------- 28. That indeed, the highest benefit of the child is to remain in a safe home, together with her parents and closest relatives but that is not possible and, furthermore, the situation of her mother necessarily poses on her the disjunctive of living apart from her father or otherwise that her mother travels alone, without her and, in both cases, causing her an important family and affective loss. ---------------------------
---------- 29. That if it we take into consideration that the exit to the country requested to this Court were only as

REDACTED

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667    P. 17.

- // ---------------------------------------------------------

expressed by the mother, i.e., to conduct a postgraduate course on oceanography in the city of Texas, for three years commencing in August 2003, such span of time is excessive since, given the age and developmental stage of the subject minor, the experiences and time of a developing child are entirely different from that of an adult and, in the instant case, if the claim of the petitioner were admitted entirely, the loving relation between the child and her father would be seriously endangered, which has to be safeguarded in this matter. -------- ---------- 30. That, notwithstanding the foregoing, and although the challenging arguments have been regarded as admissible and on the other hand the mother has not offered a sufficient security to ensure or assume effective compliance with the visitation rights of the father, a resolution will be rendered anyway, combining the wishes of both parties, safeguarding the rights of the minor and avoiding incidental detachments or affective losses, and procuring to reinforce the paternal relationship and her permanence with her mother. ------ ---------- Due to all these considerations and taking into account the provisions of Articles 7 et seq of the Convention on the Rights of Children, Articles 34, 36 and 49 of Law 16,618, articles 160, 171, 262, 356 et seq and 689 of the Code of Civil Procedure, it is ORDERED DECREED AND ADJUDGED: ----------------- ---------- I. That the objections raised on pages 95 and 96 are hereby admitted. ----------------------------------------------- ---------- II. That the request for authorization to exit the country filed on page 14 is hereby admitted in terms that the subject minor ███████████████████ may travel to the

**REPÚBLICA DE CHILE**
**MINISTERIO DE RELACIONES EXTERIORES**

Doc. 05/1667    P. 18.

- // ------------------------------------------------------

United States, Texas, along with her mother **Flavia Cecilia Velásquez Ruiz**, during the second year of the postgraduate course to be taken by her in that country; that is, for the period of **ONE YEAR FROM AUGUST 2004 TO JULY 2005.** --------------

---------- III. That without it meaning a condition for compliance with the aforementioned, before effecting the exit of the country by the subject minor, the mother shall prove to have taken the first year of the postgraduate course on oceanography to be conducted at the University of Texas, United States of America. ----------------------------------------------------

---------- IV. That this authorization does not imply a permit for the minor to be adopted abroad. ----------------------------

---------- Let it be notified, registered and filed when appropriate. ----------------------------------------------------



---------- Illegible signature -------------------------------

---------- RENDERED BY THE HON. **ALBA ROSA MELUSSA**, INCUMBENT JUDGE. ------------------------------------------------------

---------- AUTHORIZED BY MS. **AMALIA FERNÁNDEZ MARTÍNEZ**, DEPUTY CLERK. -----------------------------------------------------

-----------------------------------------------------------

---------- SAN MIGUEL, October thirtieth, 2003. ---------------

---------- WHEREAS: ------------------------------------------

---------- FIRST: No impediments have been accredited for the mother to exercise her right to take care of her daughter, a five-year-old child who has remained with her mother ever since she was born and being affectively related to her, who has provided the love, care and affection required by her, all of that within a well-constituted family which has even augmented

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 19.

- // --------------------------------------------------------

with the recent birth of a sister, reason by which it does not
seem convenient for the superior interest of the child to
separate her from her mother in the manner established in the
decree under review; -----------------------------------------

---------- SECOND: That for any child it is fundamental to keep
emotional stability towards his biological parents, which is
only achieved through affection and contact with both parents;
in the instant case, for the father to exercise his-right-duty
to visit his daughter and cooperate with her education and
upbringing, it become necessary to have such right regulated, by
establishing by agreement between the parties the manner in
which it is to be exercised; that is, during the vacation time
that the minor has in the country where her mother will reside,
without prejudice to other rights that the defendant party may
request in time. ---------------------------------------------

---------- THIRD: The from these grounds it is inferred that
the minor's father, may not hinder the mother's right to develop
professionally, even more so if such training will imply future
benefits to the subject minor. --------------------------------

---------- And further considering the merit of this matter and
pursuant to the provisions of article 37 of Law No. 16,618 on
minors and 225 of the Civil Code, the appealed judgment dated
August twenty-eight of the current year, recorded on pages 146
to 156 IS HEREBY CONFIRMED, by stating that the authorization to
exit the country is admitted in favor of the minor ███████████,
who may travel to the United States of America,
Texas, along with her mother Flavia Cecilia Velásquez Ruiz for
the three years that she will take he postgraduate course in

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 20.

- // --------------------------------------------------------

that country. -----------------------------------------------

---------- The foregoing is without prejudice to the statement

in the second whereas clause of this judgment regarding the

visitation rights in favor of the minor's father Óscar Manuel

Reyes Pastén. -------------------------------------------------

---------- Let it be registered and returned. -----------------

---------- No. 1297-2003 --------------------------------------

---------- Five illegible signatures --------------------------

---------- Rendered by justices Ms. Carvajal, Ms. Letelier and

Associate Lawyer Ms. Montt. Authorized by Mr. Raúl Molina,

Incumbent Clerk. ----------------------------------------------

---------- Illegible signature --------------------------------

---------- In San Miguel, on this thirtieth day of October, two

thousand and three, I served the foregoing judgment by daily

report. -------------------------------------------------------

---------- Illegible signature --------------------------------

--------------------------------------------------------------

---------- This is to certify that the foregoing photocopies

are true to their original seen by me. San Bernardo, August 9,

2004. ---------------------------------------------------------

---------- Illegible signature --------------------------------

---------- MARÍA ESTER CASTILLO GRANDÓN ------------------------

---------- INCUMBENT CLERK -------------------------------------

---------- Seal: JUVENILE COURT - SAN BERNARDO - CLERK. --------

---------- THIS IS TO CERTIFY that the foregoing signature is

that of Ms. MARÍA CASTILLO GRANDÓN, Incumbent clerk of the

Juvenile Court of San Bernardo. Santiago, March second, 2005. --

---------- Illegible signature --------------------------------

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1667    P. 21.

- // -----------------------------------------------------

---------- CARLOS A. MENESES PIZARRO ----------------------

---------- CLERK - SUPREME COURT. -------------------------

---------- Seal: SUPREME COURT OF JUSTICE - CHILE - CLERK ------

---------- The Ministry of Justice of Chile certifies the

authenticity of the signature of Mr. Carlos Meneses. -----------

---------- Santiago, March 2, 2005 ---------------------------

---------- Illegible signature. ------------------------------

---------- VERÓNICA LAGOS FRAGA -------------------------------

---------- Legalization Officer ------------------------------

---------- The Ministry of Foreign Affairs of Chile does hereby

legalize the signature of Ms. V. Lagos. -------------------------

---------- Illegible signature. ------------------------------

---------- MANUEL VERDEJO M. ----------------------------------

---------- Legalization Officer ------------------------------

---------- March 2, 2005. ------------------------------------

---------- Seal: MINISTRY OF FOREIGN AFFAIRS - CHILE. -------

===============================================================

DONE at SANTIAGO, CHILE, on this 28th day of March, 2005.

ALEJANDRA VERGARA ZAPATA
TRANSLATOR

Legalizada en el Ministerio
de Relaciones Exteriores de Chile
Firma del Señor ...

MIGUEL ROYLES VARGAS
Oficial de Legalizaciones

**EXHIBIT 2-C**

FOJA: 110.
Ciento Diez.

REDACTED

**Valdivia,** veintiséis de julio de dos mil cuatro.

**VISTOS:**

Se reproduce la sentencia apelada en su parte expositiva, considerandos y citas legales, con excepción del considerando noveno, que se elimina.

**Y se tiene en su lugar y, además, presente:**

Que en la sentencia de segunda instancia de la Ilmta. Corte de Apelaciones de San Miguel sobre autorización para salir del país respecto de la menor ▓▓▓▓▓▓▓▓▓▓ de fojas 94 y 95, resuelve en su considerando segundo el derecho a visita del padre en el período de vacaciones que la menor tenga en el país donde su madre residirá, sin perjuicio de otros derechos que el padre pueda deducir en su oportunidad.    Y visto además lo dispuesto en los artículos 186 y siguientes del Código de Procedimiento Civil y artículo 37 de la Ley N° 16.618, Se **REVOCA** la sentencia apelada de dieciséis de abril del dos mil cuatro, escrita de fojas 99 a 102, y se declara en su lugar que se      acoge      la demanda de regulación de visitas en los términos señalados en la sentencia previamente aludida, en cuanto a que se concede el derecho a visitas al padre durante el período de vacaciones de la menor en el país donde su madre resida.

Regístrese y devuélvase,
Rol n° 83-2004.

Pronunciada por la **SEGUNDA SALA,** por el Ministro Sr. PATRICIO ABREGO DIAMANTTI, la Srta. Fiscal Judicial RUBY ALVEAR MIRANDA, Abogado Integrante Sr. HÉCTOR MÉNDEZ EYSSAUTIER. Autoriza el Secretario Sr. FERNANDO LEÓN RAMÍREZ.

**En Valdivia,** veintiséis de Julio de dos mil cuatro notifiqué por el **ESTADO DIARIO** la resolución precedente

**Certifico:** Que con esta fecha se dio cumplimiento a lo dispuesto en el artículo 162 del Código de procedimiento Civil. **Valdivia,** 26 de Julio de 2004.

6/8/04

CONFORME CON SU ORIGINAL



Poder Judicial
CHILE

//TIFICO que la firma que antecede corresponde a la de don
FERNANDO LEON RAMIREZ. Secretario de la Iltma. Corte
de Apelaciones de Valdivia. Santiago, dos de marzo de 2005.

CARLOS A. MENESES PIZARRO
SECRETARIO
CORTE SUPREMA

El Ministerio de Justicia de Chile
Certifica la autenticidad de la firma de
don
Santiago, 0 2 MAR. 2005

VERONICA LAGOS FRAGA
Oficial de Legalizaciones

Legalizada en el Ministerio
de Relaciones Exteriores de Chile
Firma del Señor

MANUEL VERDEJO M.
Oficial de Legalizaciones
-2 MAR 2005

MINISTERIO DE RELACIONES EXTERIORES
CHILE

Auténtica
Idioma Español
0 2 MAR. 2005
Urgente    Extra-urgente
Nº 05 / 1666

# EXHIBIT 2-D

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

## OFFICIAL TRANSLATION

Under the oath prescribed by article sixty-three of the Code of Civil Procedure of the Republic of Chile, I do hereby certify that the following translation from the Spanish original numbered 05/1666 is genuine. -----------------------------------
-------------------- RUBRICATO NE VARIETUR ----------------------

## COURT JUDGMENT

---------- The document whereof the translation follows hereinbelow is a certified true photocopy of a COURT JUDGMENT, issued in the Spanish language, signed, authorized and legalized according to Chilean laws, and reads as follows: ---------------
---------- One hundred and ten (110) ----------------------------
---------- Valdivia, July twenty-sixth, two thousand and four.
---------- The whereas clauses, findings of fact, and considerations of law of the appealed judgment, except for whereas clause ninth which is eliminated, are reproduced. ------

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

REDACTED

Doc. 05/1666    P. 2.

- // ----------------------------------------------------------

---------- And in their stead the following is inserted; and further bearing in mind: ------------------------------------

---------- That the second instance judgment by the Honorable Court of Appeals of San Miguel on Authority to Exit the Country in respect of the minor ██████████████████ on pages 94 and 95 has resolved under the second whereas clause the visitation right of the father during the vacation period of the minor in the country where her mother will reside, without prejudice to other rights that the father may claim in time. And further, having regard to the provisions of articles 186 et seq of the Code of Civil Procedure and article 37 of Law No. 16,618, the appealed judgment of April sixteenth two thousand and four, recorded on pages 99 through 102 is **HEREBY REVOKED** and instead it is adjudged that the claim for regulation of visitation rights is hereby admitted under the terms set forth in the above-mentioned judgment, that the visitation right is granted to the father during the vacation period of the minor in the country where her mother resides. ------------------------------

---------- July 28, 2004. ------------------------------------

---------- Let it be registered and returned. ------------------

---------- Docket No. 83-2004. --------------------------------

---------- Three illegible signatures ------------------------

---------- In agreement with its original ----------------------

---------- 08/06/04 -------------------------------------------

---------- Illegible signature --------------------------------

---------- Seal: COURT OF APPEALS - VALDIVIA - CLERK ----------

----------------------------------------------------------------

---------- Rendered by the **SECOND COURTROOM**, Justice PATRICIO

REPÚBLICA DE CHILE
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1666    P. 3.

- // ---------------------------------------------------------------

ABREGO DIAMANTTI, the Judicial Attorney, RUBY ALVEAR MIRANDA, and Associate Justice HÉCTOR MÉNDEZ EYSSAUTIER. Authorized by Mr. FERNANDO LEÓN RAMÍREZ, Clerk. -----------------------------

---------- Illegible signature -------------------------------

---------- In Valdivia, on this twenty-sixth day of July, two thousand and four, I served the foregoing judgment by DAILY REPORT. ---------------------------------------------------------

---------- Illegible signature -------------------------------

---------- This is to certify that the provision of Article 162 of the Code of Civil Procedure has been enforced on this date. Valdivia, July 26, 2004. ----------------------------------------

---------- In agreement with its original ----------------------

---------- 08/06/04 --------------------------------------------

---------- Illegible signature -------------------------------

---------- Seal: COURT OF APPEALS - VALDIVIA - CLERK ----------

------------------------------------------------------------------

---------- THIS IS TO CERTIFY that the foregoing signature is that of Mr. FERNANDO LEÓN RAMÍREZ, Clerk of the Hon. Court of Appeals of Valdivia. Santiago, March second, 2005. -------------

---------- Illegible signature -------------------------------

---------- CARLOS A. MENESES PIZARRO --------------------------

---------- CLERK - SUPREME COURT. ------------------------------

---------- Seal: SUPREME COURT OF JUSTICE - CHILE - CLERK ------

---------- The Ministry of Justice of Chile certifies the authenticity of the signature of Mr. Carlos Meneses. -----------

---------- Santiago, March 2, 2005 ----------------------------

---------- Illegible signature. -------------------------------

---------- VERÓNICA LAGOS FRAGA --------------------------------

**REPÚBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 05/1666    P. 4.

- // -----------------------------------------------------------

---------- Legalization Officer -----------------------------

---------- The Ministry of Foreign Affairs of Chile does hereby

legalize the signature of Ms. V. Lagos. ----------------------

---------- Illegible signature. ------------------------------

---------- MANUEL VERDEJO M. ---------------------------------

---------- Legalization Officer ------------------------------

---------- March 2, 2005. ------------------------------------

---------- Seal: MINISTRY OF FOREIGN AFFAIRS - CHILE. --------

==============================================================

DONE at SANTIAGO, CHILE, on this 28th day of March, 2005.



ALEJANDRA VERGARA ZAPATA

TRANSLATOR

# EXHIBIT 3

06.001525.cv.85

FILED
DC
At 8 o'clock A M
JUN 26 2006
MARC HAMLIN, DIST CLERK
Brazos County, Texas
By_____, Deputy

REDACTED

**U S Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 4.20 |
| Certified Fee | | 2.40 |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 12.19 |

Flavia Cecilia Ruiz Velasquez

College Station, TX 77840

PS Form 3800     See Reverse for Instructions

7005 2570 0000 6882 1922

---

■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery
Flavia Velasqu 6/23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Flavia Cecilia Ruiz Velasquez

College Station, TX 77840

06-001525-cv-36186

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7005 2570 0000 6882 1922

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# EXHIBIT 4

# TEXAS A&M UNIVERSITY

COLLEGE STATION, TEXAS 77843-0100



ACADEMIC CERTIFICATION

*Office of*
Admissions & Records
(979) 845-1003

**JONES, WALTER BRIAN**

SCOTT DAYTON
WEIL, GOTSHAL & MANGES LLP
700 LOUISIANA, SUITE 1600
HOUSTON TX        77002

As of 08/25/06, I hereby certify the following:

| | |
|---|---|
| Degree Awarded: | MS |
| Major: | OCEANOGRAPHY |
| Date Conferred: | 12/15/01 |

Enrollment History:

| | |
|---|---|
| 10 HOURS FALL SEMESTER 1998 | 08/31/1998 - 12/16/1998 FT |
| 09 HOURS SPRING SEMESTER 1999 | 01/19/1999 - 05/12/1999 FT |
| 06 HOURS SUMMER SEMESTER 1999 | 05/31/1999 - 08/06/1999 FT |
| 09 HOURS FALL SEMESTER 1999 | 08/30/1999 - 12/15/1999 FT |
| 09 HOURS SPRING SEMESTER 2000 | 01/18/2000 - 05/10/2000 FT |
| 06 HOURS SUMMER SEMESTER 2000 | 05/29/2000 - 08/09/2000 FT |
| 09 HOURS FALL SEMESTER 2000 | 08/28/2000 - 12/13/2000 FT |
| 09 HOURS SPRING SEMESTER 2001 | 01/16/2001 - 05/09/2001 FT |
| 06 HOURS SUMMER SEMESTER 2001 | 05/28/2001 - 08/08/2001 FT |
| 01 HOURS FALL SEMESTER 2001 | 08/27/2001 - 12/12/2001 LH |
| 09 HOURS FALL SEMESTER 2004 | 08/30/2004 - 12/15/2004 FT |
| 09 HOURS SPRING SEMESTER 2005 | 01/18/2005 - 05/11/2005 FT |
| 09 HOURS SUMMER SEMESTER 2005 | 05/31/2005 - 08/10/2005 FT |
| 09 HOURS FALL SEMESTER 2005 | 08/29/2005 - 12/14/2005 FT |

FT=Full-Time  HT=Half-Time  LH=Less than Half-Time  WD=Withdrew
MH=More than Half-Time  NE=Not Enrolled
C=CO-OP  I=Individual Approval  N=Intern  S=Student Teach  F=Field Experience

*Donald D. Carter*
Registrar

The Office of Postsecondary Education Identification (OPID) number for Texas A&M University is 003632.

Texas A&M University's certification system is designed to expedite the sharing of academic information with many agencies. We appreciate your acceptance of this certification since hand-processing of special forms can slow our response.

This letter is not official without the printed seal of Texas A&M University and the signature of the Registrar.

** End of Computer-Generated Information **

*Donald D. Carter*

Registrar

# EXHIBIT 5



OFFICE OF THE REGISTRAR
THE UNIVERSITY OF TEXAS AT AUSTIN

*PO Box 7216 • Austin, TX 78713-7216 • (512) 475-7575 • (512) 475-7515*

August 28, 2006

LINDA E CALLES
WEIL, GOTSHAL & MANGES LLP
700 LOUISIANA STE 1600
HOUSTON TX 77002

To Whom It May Concern:

The Office of the Registrar at the University of Texas at Austin maintains records of all students who have attended the University (in-residence, Austin campus only). This letter serves as confirmation that after a careful and thorough search, we find no such record for the following individual:

**VELASQUEZ RUIZ OR JONES, FLAVIA  CECILIA**

If there is additional information not mentioned in your original request that may help us locate this record, please return that information to us.

Thank you,

Vasanth Srinivasa
Assistant Registrar

# EXHIBIT 6



## Texas A&M University
### Office of Admissions and Records
### Registrar

August 24, 2006

To Whom It May Concern:

This letter is to certify that **Flavia Velasquez (a.k.a. Flavia Ruiz, Flavia Jones)** was never enrolled at this University according to records currently on file at Texas A&M University in College Station, Texas.

Venesa A. Flores
Associate Registrar

# EXHIBIT 7

Civil Code of the Republic of Chile
Book I

Title IX
Rights and obligations among the parent and the child

Art. 224.     It is joint between the parents, or the father or the mother alive, the custody and the personal caring, nursing and the education of their children.
The custody of a child not conceived neither born during the marriage, recognized as the child of one of the foster parents will be to the parent who recognize the foster child as his own. If neither the mother nor the father recognizes the child as its own, the judicial authorities would determine to who the custody of the child is given to.

CÓDIGO CIVIL DE LA REPÚBLICA DE CHILE
LIBRO I

TITULO IX
De los derechos y obligaciones entre los padres y los hijos

Art. 224. Toca de consuno a los padres, o al padre o madre
sobreviviente, el cuidado personal de la crianza y educación
de sus hijos.
El cuidado personal del hijo no concebido ni nacido durante
el matrimonio, reconocido por uno de los padres, corresponde
al padre o madre que lo haya reconocido. Si no ha sido
reconocido por ninguno de sus padres, la persona que tendrá
su cuidado será determinada por el juez.

Art. 225. Si los padres viven separados, a la madre toca el
cuidado personal de los hijos.
No obstante, mediante escritura pública, o acta extendida
ante cualquier oficial del Registro Civil, subinscrita al
margen de la inscripción de nacimiento del hijo dentro de los
treinta días siguientes a su otorgamiento, ambos padres,
actuando de común acuerdo, podrán determinar que el cuidado
personal de uno o más hijos corresponda al padre. Este
acuerdo podrá revocarse, cumpliendo las mismas solemnidades.
En todo caso, cuando el interés del hijo lo haga
indispensable, sea por maltrato, descuido u otra causa
calificada, el juez podrá entregar su cuidado personal al
otro de los padres. Pero no podrá confiar el cuidado personal
al padre o madre que no hubiese contribuido a la mantención
del hijo mientras estuvo bajo el cuidado del otro padre,
pudiendo hacerlo.
Mientras una subinscripción relativa al cuidado personal no
sea cancelada por otra posterior, todo acuerdo o resolución
será inoponible a terceros.

Public Lay 16,618 - LAW OF MINORS

Art; 49.        . The exit or outgoing of a child from Chilean territory should be subjected by this article and its rules, not with standing any other provision of Law No 18,703 Child Adoption.

If the custody of the child has not been given by judicial authorities to one of the parents neither to a third party, the child could not exit without the proper (notarize) authorization of both parent, or from who has recognized the foster child as his own.

The custody given by judicial authorities to any of the parents or to a third party, the child may not exit the country without the proper authorization of who the custody has been given to.

The right that is previously regulated, referred in the Civil Code in Art 229 by the judges decision or a reconcile arrangement approved by the court, it is also necessary to have an authority from the father or the mother whom have the custody.

The authorization referred above shall be presented in writing and must be witness by a Public notary. That authorization will not be necessary if the child travels or exit the country with who the custody has been given to.

In the case the authorization could not be obtain from who has the right of custody or refuse to give it, the authorization could be only given by the Judge of the Children's Court Division of the district in which the child lives. The Judge in order to give the authorization in this case, shall consider the benefic for the child and shall the Judge establish the time period that the exit of the child should last for which give the authorization.

Expire the period of the authorization referred above otherwise the child has not return to the country within the period authorize by the Judge, he may rules the cease of the money given by the other party as child support.

In any other case, for a child to exit the country it will be needed the authorization from the Judge of the Children's Court Division of the district in which the child lives.

Biblioteca del Congreso Nacional
--------------------------------------------------------------
Organismo: MINISTERIO DE JUSTICIA
Última modificación: LEY-19927 14.01.2004
APELLIDOS; DE LA LEY N°16.618, LEY DE MENORES; DE LA LEY

Santiago, 16 de mayo del 2000.-

Modificado por L. 19.585, Art. 5°, N° 5 letra a) y letra b, L. 19.585, LEY 19711 Art. único N° 3 D.O. 18.01.2001

Art. 49. La salida de menores desde Chile deberá sujetarse a las normas que en este artículo se señalan, sin perjuicio de lo dispuesto en la Ley N° 18.703.

Si la tuición del hijo no ha sido confiada por el juez a alguno de sus padres ni a un tercero, aquél no podrá salir sin la autorización de ambos padres, o de aquel que lo hubiere reconocido, en su caso.

Confiada por el juez la tuición a uno de los padres o a un tercero, el hijo no podrá salir sino con la autorización de aquel a quien se hubiere confiado.

Regulado el derecho a que se refiere el artículo 229 del Código Civil por sentencia judicial o avenimiento aprobado por el tribunal, se requerirá también la autorización del padre o madre a cuyo favor se estableció.

El permiso a que se refieren los incisos anteriores deberá prestarse por escritura pública o por escritura privada autorizada por un Notario Público. Dicho permiso no será necesario si el menor sale del país en compañía de la persona o personas que deben prestarlo.

En caso de que no pudiere otorgarse o sin motivo plausible se negare la autorización por uno de aquellos que en virtud de este artículo debe prestarla, podrá ser otorgada por el juez de letras de menores del lugar en que tenga su residencia el menor. El juez, para autorizar la salida del menor en estos casos, tomará en consideración el beneficio que le pudiere reportar y señalará el tiempo por el que concede la autorización.

Expirado el plazo a que se refiere el inciso anterior sin que el menor, injustificadamente, vuelva al país, podrá el juez decretar la suspensión de las pensiones alimenticias que se hubieren decretado.

En los demás casos para que un menor se ausente del país requerirá la autorización del juzgado de letras de menores de su residencia.

# EXHIBIT 8

**REPUBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES



D I R A S A D

TRADUCCIONES

AUTHENTIC TRANSLATION

I-935/99

Official Gazette of the Republic of Chile

Monday, October 26, 1998

(11838)/No. 36,197

General Regulations

The Legislature

Ministry of Justice

Law No. 19,585

The Civil Code and other Legal Bodies on Filiation Matters are hereby amended.

Whereas the National Congress has endorsed the following Bill:

"Article 1.- The following amendments are made to the Civil Code:

1.   Article 28 is hereby replaced with the following:

"Article 28. Consanguinity is a relationship between two persons descending one from another or from a common ascendant, in any degree."

2. Article 29 is hereby abrogated.

3. Article 30 is hereby abrogated.

4. Article 31 is replaced with the following:

"Article 31. Affinity is a relationship between a person

- // -

**REPUBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. I-855/99 · P. 19.

- // -

Article 221. A decision admitting a complaint or challenging action shall be recorded in the margin of the child's birth registration and shall not impair the rights acquired in good faith by third parties before such registration.

## TITLE IX

### Rights and duties between parents and children

Article 222. Children owe respect and obedience to their parents.

The main concern of parents is the best interests of a child. To such effect, they shall strive for its spiritual and material fulfillment, and guide it in the exercise of the fundamental rights stemming from human nature, in a way compatible with the development of its abilities.

Article 223. Although emancipation empowers a child to act independently, it is always bound to take care of its parents during their seniority, insanity and in any other circumstances demanding its aid.

Any other ascendants shall have the same rights if there are no immediate descendants or if such descendants are not enough in number.

Article 224. Both parents or the surviving father or mother of a child shall be responsible for its personal care, raising and education.

The personal care of a child conceived and born out of wedlock, acknowledged by a parent, shall fall upon the parent who has acknowledged it. If not acknowledged by any of its parents, a judge shall appoint the person who will take care of

· // -

**REPUBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. I-835/99 - F. 20.

- // -

the child.

Article 225.   If a child's parents live apart, the mother shall be responsible for its personal care.

However, by public deed on record executed before any Civil Officer, recorded in the margin of the child's birth registration within thirty days following its issuance, both parents may, by mutual agreement, decide that the father shall be responsible for the personal care of one or more children. This agreement may be revoked, upon fulfillment of the same formalities.

At any rate, where the interest of a child shall so advise, whether because of abuse, neglect or other reasonable grounds, the judge may entrust the other parent with its personal care. Nevertheless, he may not grant the personal care to the father or mother who has failed to contribute to the support of the child while under the custody of the other parent, despite his/her being able to do so.

While a registration relating to personal care is not altered by a subsequent entry, any new agreement or resolution shall not be binding upon third parties.

Article 226.   The judge may, in the event of physical or moral inability of both parents, entrust the personal care of children to a competent person or persons.

In selecting such person, the judge shall prefer the next of kin, particularly the child's ascendants.

Article 227.   In matters regarding the foregoing articles, the judge shall hear  the children and relatives and decide summarily.

- // -

**REPUBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. I-835/99 - P. 21.

- // -

Decisions shall, after becoming final, be registered in the manner and within the term established in Article 225.

Article 228. A married person who has been entrusted with the personal care of a child other than a common child may only take care of him at his/her home with the consent of his/her spouse.

Article 229. A father or mother who does not have the personal care of a child shall not be deprived of the right nor shall be exempted from the duty to keep a direct, permanent relationship with it, and to contact it as frequently and freely as agreed with its guardian or, otherwise, as determined by the judge as being in the best interest of the child.

The exercise of this right shall be suspended or restricted when it is evidently detrimental to the child's welfare, which fact shall be determined by the judge on reasonable grounds.

Article 230. Any expenses by way of education, raising and maintenance of a child should be borne by both spouses, according to the applicable rules. In the absence thereof, the child's parents shall contribute thereto according to their economic means.

In the event the father or mother should die, the foregoing expenses shall be borne by the surviving parent.

Article 231. Should the child have its own property, the expenses by way of maintenance and, if necessary, of raising and education, may be paid out of such property, the capital being kept to the extent possible.

Article 232. The obligation to feed and educate a child who lacks property shall, in the absence of its parents or their

- // -

**REPUBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 1-835/99 - P. 22.

- // -

inability to cover its needs, be discharged by both his maternal and paternal grandparents.

Article 233.   In case of disagreement between the obligees as to the manner in which the child's raising, education and maintenance expenses shall be borne by them, this shall be determined by a judge, according to their economic means. The judge may amend it from time to time, pursuant to supervening circumstances.

Article 234. Parents shall be empowered to correct their children, without causing damage to their health or personal development.

Should any damages to their health be caused or should there be reasonable grounds to so believe, the court shall, at the request of any person or by operation of law, issue protective measures for the child, without prejudice to the sanctions applicable to this offense.

Where it is so required for the well-being of a child, its parents may request the Court to make a decision on its future, for such term as it deems convenient, which may not exceed the term remaining for the child to attain eighteen years old.

The court decisions may not be amended by the mere will of the child's parents.

Article 235.   The provisions contained in the foregoing Article shall become extensive - in the event of absence, inability or death of both parents - to any other person being entrusted with the personal care of the child.

Article 236.   Parents shall have the right and obligation to educate their children, leading them towards their

- // -

**REPUBLICA DE CHILE**
MINISTERIO DE RELACIONES EXTERIORES

Doc. 1-835/99 - P. 23.

- // -

fulfillment in every step in their lives.

Article 237. The right granted upon parents under the foregoing Article shall extinguish with regard to the children whose care has been entrusted to another person, who will exercise this right with the consent of the guardian or curator, if that person is other than the guardian or curator.

Article 238. The rights granted to parents under the foregoing Articles shall not be claimed over an abandoned child.

Article 239. Those parents who have been adjudicated morally unable and therefore separated from their children by court decision shall also be deprived of such rights, unless such decision be subsequently revoked.

Article 240. If a child abandoned by his parents be fed and raised by another person and its parents wish to remove it from under his/her custody, they shall seek a court decision. Before removal, the child's parents shall pay any costs incurred by said person to raise and educate their child, as determined by the court.

The court shall only grant its authorization if, upon reasonable grounds, it is in the best interest of the child.

Article 241. If a minor child being away from home is in urgent need and cannot be assisted by its father or mother upon whom its personal care has been entrusted, it shall be presumed that such parent has given his/her consent for any person to cover the child's needs in accordance with its social standing.

The person providing maintenance to the child shall keep the father or mother informed. Any voluntary omission shall revoke such maintenance responsibility.

- // -

# EXHIBIT 9

SERVICIO DE REGISTRO
CIVIL E IDENTIFICACION
CHILE



Nro **141.291.315**

## CERTIFICADO DE NACIMIENTO

Circunscripción : CONCEPCIÓN
Nro. inscripción : 2.145          Registro :          Año : 1998

Nombre inscrito :

R.U.N.            : 19.816.114-4
Fecha nacimiento :
Sexo              : Femenino

Nombre del padre : OSCAR MANUEL REYES PASTÉN

R.U.N. del padre : 11.729.992-9

Nombre de la madre: FLAVIA CECILIA VELASQUEZ RUIZ

R.U.N. de la madre: 10.668.447-2

*REDACTED*

FECHA EMISION: 2 Marzo 2005, 10:43.

IMPUESTO PAGADO  - VALOR : $   520
Impreso en: PASAPORTES
REGION    : METROPOLITANA

1818032        RUN : 19816114-4

M. Antonieta Escobar Alvarez

FIRMA Y SELLO FUNCIONARIO AUTORIZADO

# EXHIBIT 10



**LANGUAGE
SOLUTIONS**

| | |
|---|---|
| **THE STATE OF TEXAS** | } |
| | } |
| **COUNTY OF HARRIS** | } |

## AFFIDAVIT OF TRANSLATION

Before me, the undersigned Notary appears Ms. Ana Cristina Didoné who, after being first duly sworn, deposes and says that the facts contained herein are true and correct and based upon her personal knowledge:

1. "My name is Ana Cristina Didoné and I am over the age of twenty-one years and competent to make this affidavit."

2. "I have been a certified professional translator since 1988. I hold a M.A. in Legal Translations from the Universidad del Salvador, Buenos Aires, Argentina as well as an Executive MBA from Rice University, Houston, Texas. I am certified by the American Translators Association and am a State of Texas licensed interpreter (License No. 1069)."

3. "I hereby certify that the English translation attached hereto, our job number H-8697; Certificate of September 12, 2006 issued by María Martin Paz Cofré, Head Attorney of the International Office of the Legal Assistance Corporation of the Government of Chile, for Oscar Reyes Pastén regarding the minor child Rocío Reyes Velásquez, consisting of 4 pages, is true, correct, and complete to the best of my knowledge and ability, of the original document in Spanish."

Ana Cristina Didoné
CD Language Solutions

BEFORE ME, the undersigned Notary Public, appeared Ana Cristina Didoné, having first been placed under oath, she stated that she is the person whose signature appears affixed to the foregoing statement, and she further stated under oath, that the contents of said statement are of her personal knowledge, true and correct.

Subscribed and sworn to before me this 15th day of September, 2006

Notary Public in and for the State of Texas

My commission expires October 7, 2007

2500 TANGLEWILDE, SUITE 490     HOUSTON, TEXAS 77063     PHONE/713.661.9553     FACSIMILE/713.661.4398

# FAX

**TO:   MR. SCOTT DAYTON**

**FAX NO: +1 (713) 224-9511**

**FROM:  MARIA PAZ MARTIN COFRÉ
INTERNATIONAL PROCEEDINGS OFFICE**

**FAX NO: +56 (2) 632 78 62**

**DATE: 09/12/06**

**NO. OF PAGES INCLUDING THIS PAGE:  4**

**SUBJECT:  CERTIFICATE FOR MR. OSCAR REYES**

Dear Mr. Dayton,

I am pleased to greet you and to address you in order to forward you the Certification elaborated by this Central Authority for Mr. Oscar Reyes.

If you need anything else, please do not hesitate in contacting us back.

Best regards,

[signature]
Maria Paz Martin Cofré
Head Attorney
International Proceedings Office
Legal Assistance Corporation

[seal: LEGAL ASSISTANCE CORPORATION –
INTERNATIONAL PROCEEDINGS OFFICE –
METROPOLITAN REGION]

[Translator's note:  The body of the letter above was provided in English in the original Spanish document.  It is has been retyped but not translated.]

**GOVERNMENT OF CHILE**
LEGAL ASSISTANCE CORPORATION
METROPOLITAN REGION

## CERTIFICATION

Santiago, August 25, 2006

**MARIA PAZ MARTIN COFRÉ**, Head Attorney (S) of the International Office of the Legal Assistance Corporation, Metropolitan Region, in its capacity as Central Authority for application of the 1980 Hague Convention on Civil Aspects of International Child Abduction, certifies that, since the month of December of 2004, Mr. Oscar Reyes Pastén has been represented by this Central Authority in a Visitation Schedule Proceeding regarding his daughter, petitioning the Central Authority in the United States under the terms of the 1980 Hague Convention, referenced above. This request for visitation is based on the fact that the mother of the child, Ms. Flavia Velásquez Ruiz requested an authorization to leave the country for a period of 3 years in order to complete postgraduate studies in Oceanography at a university in the State of Texas, United States.

It is also hereby certified that in the month of August of 2006, an attempt was made to notify Ms. Velasquez at her domicile in the State of Texas, United States, of a hearing which would be held in order to establish the child's visitation schedule with her father, however the information obtained by the process server of the Texas Court showed that Ms. Velásquez and the child had changed their residence and moved to the State of Alabama, United States.

It is important to note that the 3-year authorization granted by the Minor's Court in San Bernardo and confirmed by the San Miguel Appeals Court, which Mr. Reyes always opposed, was granted exclusively so that Ms. Velásquez could complete her postgraduate studies in Oceanography, however those studies were never undertaken

by Ms. Velasquez, as shown by a certification issued by Texas A&M University, the university which is near the domicile of Ms. Velásquez in Texas, and the university where Ms. Velásquez's spouse was studying, and which is also the only university in Texas which offers postgraduate level Oceanography courses.

This Central Authority also certifies that in order to request restitution of the child, ▮▮▮▮▮▮▮▮▮ to the United States, under the terms of the 1980 Hague Convention, referenced above, it is necessary for the Court in the United States <u>to immediately order that the child be returned </u>to Chile, in view of the blatant breach of the promises made to the Chilean Courts by Ms. Velásquez, including, but not limited to, the following:

1) She indicated that she would travel to Chile once a year with the child so that the child could visit her paternal relatives, however these trips never took place, or at least Mr. Reyes and his family were not aware of them.

2) As a reason for authorizing the trip, she used the sole and exclusive grounds that she would be studying in the State of Texas, United States, taking postgraduate courses in Oceanography, however to date - nearly three years after her departure - the studies have not taken place.

3) The authorization granted by the Minor's Court in San Bernardo and confirmed by the honorable San Miguel Court of Appeals, authorized her to travel exclusively to the State of Texas, United States, and does not allow her to reside in the State of Alabama, where Ms. Velásquez and her daughter are currently residing.

REDACTED

It is important to note that the purpose of the 1980 Hague Convention, referenced above, is to obtain the immediate return of any child who has been wrongfully removed or who has been retained in a country other than the child's normal country of residence, as is the case with the child, ███████████. The three reasons cited in the foregoing paragraphs are sufficient grounds to allow us to state without question that the minor child has been wrongfully removed or retained in the United States, and that the child has been completely kept away from her father and all of her paternal relatives and her Chilean roots for a period of nearly three years.

[signature]

MARIA PAZ MARTIN COFRE

HEAD ATTORNEY

INTERNATIONAL OFFICE

LEGAL ASSISTANCE CORPORATION, METROPOLITAN REGION

[seal: LEGAL ASSISTANCE CORPORATION –
INTERNATIONAL PROCEDURES OFFICE –
METROPOLITAN REGION]

**GOBIERNO DE CHILE**
CORPORACION DE ASISTENCIA JUDICIAL
REGION METROPOLITANA

<u>CERTIFICADO</u>

Santiago, 25 de Agosto de 2006

**MARÍA PAZ MARTIN COFRÉ**, Abogada Jefe (S) de la Oficina Internacional de la Corporación de Asistencia Judicial de la Región Metropolitana, en su calidad de Autoridad Central para la aplicación de la Convención Sobre Aspectos Civiles de la Sustracción Internacional de Niños de La Haya de 1980, certifica que desde el mes de Diciembre de 2004, el Señor Oscar Reyes Pastén, está siendo patrocinado por esta Autoridad Central en Juicio de Régimen de Visitas de su hija, solicitado a la Autoridad Central de Estados Unidos, en virtud de la Convención de la Haya de 1980, antes señalada. Dicha solicitud de Vistas se inicia toda vez que a la madre de la niña, Sra. Flavia Velásquez Ruiz, solicitó un permiso para salir del país por 3 años a objeto de Estudiar un Post grado en Oceanografía en una Universidad del Estado de Texas, Estados Unidos.

Se certifica también, que en el mes de Agosto de 2006 se intenta notificar a la Sra. Velásquez, en su domicilio del Estado de Texas, Estados Unidos, de la audiencia que se llevaría a cabo a objeto de regular el régimen de visitas de la niña con su padre, sin embargo la información que obtuvo el receptor del Tribunal de Texas, es que la Sra. Velásquez y la niña habrían cambiado su residencia al Estado de Alabama, Estados Unidos.

Cabe señalar, que el plazo de 3 años, otorgado por el Tribunal de Menores de San Bernardo y confirmado por la Corte de Apelaciones de San Miguel, al cual el Sr. Reyes constantemente se opuso, fue

REDACTED

**GOBIERNO DE CHILE**
CORPORACION DE ASISTENCIA JUDICIAL
REGION METROPOLITANA

exclusivamente con el objeto que la Sra. Velásquez efectuara estudios de post grado en Oceanografía, sin embargo dichos estudios jamás fueron realizados por la Sra. Velásquez, de acuerdo a la certificación emitida por la Texas A&M University, Universidad que se encuentra cerca del domicilio que la señora tenía en Texas, es la Universidad donde el cónyuge de la Sra. Velásquez se encontraba estudiando, y además es la única Universidad de Texas que imparte cursos de Oceanografía a nivel de post grado.

Esta Autoridad Central certifica, a su vez, que con el objeto de poder solicitar la restitución de la niña ████████████ a Estados Unidos, en virtud de la Convención de la Haya de 1980 antes señalada, es necesario que un Tribunal de los Estados Unidos <u>ordene, a la brevedad, el inmediato regreso</u> de la niña a Chile, en atención al abierto incumplimiento de lo prometido ante los Tribunales Chilenos por la Sra. Velásquez, entre otras cosas:

1) Señaló que viajaría una vez al año a Chile con la niña para que esta compartiera con su familia paterna, viajes que nunca se han producido, al menos no con el conocimiento del Sr. Reyes o su familia.

2) Argumentó como razón para que el viaje fuera autorizado, exclusivamente el hecho que estudiaría en el Estado de Texas, Estados Unidos, un post grado en Oceanografía, sin embargo hasta la fecha - casi tres años de su partida – nunca ha efectuado dichos estudios.

3) El permiso concedido por el Juzgado de Menores de San Bernardo y confirmado por la Ilustrísima Corte de Apelaciones de San Miguel, la

REDACTED

**GOBIERNO DE CHILE**
CORPORACION DE ASISTENCIA JUDICIAL
REGION METROPOLITANA

autorizaba exclusivamente a viajar al Estado de Texas, Estados Unidos, y no para residir en el Estado de Alabama, donde se encontraría residiendo actualmente la Sra. Velásquez y su hija.

Cabe señalar, que el objeto de la Convención de la Haya de 1980, antes señalada, es obtener el inmediato regreso de cualquier niño que haya sido trasladado o se encuentre retenido ilícitamente en un país distinto al de su residencia habitual, como sería el caso de la niña ████ ████████. Las tres razones nombradas en los párrafos anteriores son motivos suficientes que nos permiten decir sin lugar a duda que la menor ha sido trasladada o se encuentra retenida ilícitamente en los Estados Unidos manteniendo a la niña absolutamente alejada de su padre y de toda su familia paterna y de sus raíces Chilenas durante casi tres años.

MARÍA PAZ MARTIN COFRÉ

ABOGADA JEFE (S)

OFICINA INTERNACIONAL

CORPORACIÓN DE ASISTENCIA JUDICIAL REGIÓN METROPOLITANA

# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

OSCAR MANUEL REYES PASTÉN,

   Petitioner,

vs.

FLAVIA CECILIA RUIZ VELÁSQUEZ,

   Respondent.

C.A. No. 2:06 CV 632-MHT

## ORDER

1. Petitioner Oscar Manuel Reyes Pastén's ("Reyes") Petition For The Return Of A Child Under The Hague Convention On The Civil Aspects Of International Child Abduction is **GRANTED**.

2. Respondent Flavia Cecilia Ruiz Velásquez ("Ruiz") is **ORDERED** to transport and return RMRV to San Felipe, Quinta Region, Chile no later than 20 days following the issuance of this order.  In the alternative, Ruiz may relinquish RMRV to Reyes, or his duly appointed representative in the United States, at _____ o'clock _____ .m. on the _____ day of _____, 200___ in the United States Courthouse for the Middle District of Alabama, Northern Division and Reyes, or his duly appointed representative, may then transport and return RMRV home to San Felipe, Quinta Region, Chile.

3. It is **FURTHER ORDERED** that RMRV shall not be removed from the Middle District of Alabama pending her return to Chile.  The passports of Ruiz and RMRV are to remain with the Clerk until Ruiz proffers to the Court evidence that she has purchased a return ticket for RMRV to Chile.

4.    Pending RMRV's return to Chile, it is **FURTHER ORDERED** that Ruiz shall provide Reyes, and RMRV's relatives on his side of the family, with daily, unrestricted access to RMRV via email, telephone, mail, instant messenger service, and any other reasonable medium of communication.

5.    It is **FURTHER ORDERED** that Ruiz shall recognize and facilitate Reyes's rights under Section 3-3-154 of the Code of Alabama by giving Reyes all reasonable information and consent necessary for him to obtain RMRV's medical records; physiological records; dental records; scholastic records; athletic records; extracurricular records; and law enforcement records.

6.    The Court understands that ICARA provides for the payment of attorney's fees and costs.  42 U.S.C. § 11607(b)(3).   Thus, it is **FURTHER ORDERED** that Reyes shall  file any motion for attorney's fees and costs by the _____ day of _____ _____, 2006.  Respondent shall have until the ___ day of _____ _____, 2006 to oppose any such motion.

Signed on the _____ day of _____, 200__.

_____
United States District Judge