**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2006 SEP 18  A 10: 22

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

OSCAR MANUEL REYES PASTÉN,          )
                                    )
          Petitioner,               )     C.A. No. _____
                                    )
vs.                                 )       2:06cv832-MHT
                                    )
FLAVIA CECILIA RUIZ VELÁSQUEZ,      )
                                    )
          Respondent.               )     **REDACTED**

**MOTION FOR *EX PARTE***
**TEMPORARY RESTRAINING ORDER**

This action was previously filed in the State of Texas. After learning that the Texas action was imminent, but before being served with it, respondent Flavia Cecilia Ruiz Velásquez ("Ruiz") left the State of Texas and moved to the State of Alabama. To prevent a recurrence of what happened in Texas, the Court should issue an *ex parte* temporary restraining order to prevent RMRV from leaving its jurisdiction until this matter is resolved.

**BACKGROUND**

1.       Concurrently with this motion, petitioner Oscar Manuel Reyes Pastén ("Reyes") is filing a Petition For The Return Of A Child Under The Hague Convention On The Civil Aspects Of International Child Abduction (the "Petition"), which is incorporated by reference. As demonstrated in the Petition, Ruiz has wrongfully retained/removed Reyes's daughter, RMRV, within the meaning of the Hague Convention On The Civil Aspects Of International Child Abduction ("The Hague Convention"). The Petition seeks an order for Ruiz to return RMRV to her home in Chile.

2.     On June 16, 2006, Reyes filed a petition[1] in the 85th Judicial District Court of Brazos County, Texas to register the Chilean orders granting him access rights to RMRV in accordance with the Texas Uniform Child Custody Jurisdiction and Enforcement Act.[2]   The Texas court sent notice of the petition for registration to Ruiz at her residence in College Station, Texas.  Ruiz signed a U.S. Postal Service receipt for the notice in College Station on June 23, 2006.[3]

3.     Ruiz never objected to the registration and, on August 8, 2006, Reyes filed a petition in the Texas court to enforce his access rights to RMRV.[4]  On August 17, 2006, a Brazos County Sheriff went to Ruiz's residence in College Station, Texas to serve her with the petition to enforce,[5] and a notice for a hearing on it that was scheduled for August 25, 2006.[6]  Upon arrival, the Sheriff learned that Ruiz no longer lives at that address.[7]  The new occupants of that address informed the Sheriff that they had been living there since July 14, 2006.  Investigation has revealed that Ruiz is now living in Montgomery, Alabama.[8]  Thus, Ruiz left Texas with RMRV sometime between June 23, 2006 and July 14, 2006 after receiving notice that Reyes was seeking to enforce his custody rights in Texas.  Reyes was then forced to abandon his Texas action and file this action in Alabama.[9]

---

[1]   Cause. No. 06-001525-CV-85.

[2]   TEX. FAM. CODE § 152.305.

[3]   Ex. 1 (United States Postal Service receipt).

[4]   Ex. 2 (copy of the Texas petition).

[5]   Ex. 3 (August 28, 2006 letter from Sergeant Thomas L. Randall of the Brazos County Sheriff's Office).

[6]   See Ex. 4 (letter to Texas court canceling hearing).

[7]   Ex. 3.

[8]   Ex. 3.

[9]   Ex. 5 (nonsuit of Texas action).

4.    To prevent a recurrence of what happened in Texas, the Court should issue an order preventing RMRV from leaving its jurisdiction pending resolution of this matter.

## ARGUMENT & AUTHORITIES

5.    The International Child Abduction Remedies Act[10] ("ICARA") implemented the Hague Convention in the U.S.[11]  Section 11604(a) of ICARA specifically authorizes courts to "take or cause to be taken measures under Federal or State law . . . to prevent the child's further removal or concealment before the final disposition of the petition."  One such measure is a temporary restraining order under FRCP 65(b).[12]

6.    The four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted are whether the movant has established:  (1) a substantial likelihood of success on the merits;  (2) that irreparable injury will be suffered if the relief is not granted;  (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.[13]  This case satisfies each of the four requirements.

## A.    There Is A Substantial Likelihood That Reyes Will Succeed On The Merits

7.    In Morgan v. Morgan, the petitioner father filed a Hague Convention petition alleging that the respondent mother had removed their six-year-old from their home in England without his consent and taken her to the State of Iowa. [14]  The father also alleged that the mother had plans to move to a different jurisdiction, so he sought an *ex parte* temporary restraining order

---

[10]    42 U.S.C. § 11601-11610 (1988).

[11]    United States Department of State regulations implementing the Convention and ICARA can be found at 22 C.F.R Part 94.

[12]    *See* Morgan v. Morgan, 289 F. Supp. 2d 1067 (N.D. Iowa 2003).

[13]    Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Butler v. Ala. Judicial Inquiry Comm'n, 111 F. Supp. 2d 1224, 1229 (M.D. Ala. 2000).

[14]    Morgan, 289 F. Supp. 2d 1067.

("TRO") prohibiting the removal of the child from the court's jurisdiction pending hearing on the merits of the father's Hague Convention petition. The Morgan court found that the father's Hague Convention petition satisfied the first TRO requirement because it demonstrated his rights of custody under English law, and his right to relief under the Hague Convention.[15]

8. Just as in Morgan, Reyes's Petition demonstrates that he is entitled to the requested relief under the Hague Convention. Specifically, it sets forth in detail why RMRV has been wrongfully retained/removed within the meaning of the Hague Convention, and why the Court should order her returned home to Chile.[16] Thus, the first TRO requirement is satisfied.

### B. Reyes Will Suffer Irreparable Harm If Ruiz Flees The Court's Jurisdiction With RMRV

9. The Morgan court also found the second TRO factor satisfied because the father had only been allowed one telephone call with his child and there was evidence that the mother was likely to leave the court's jurisdiction upon receiving notice of the father's legal action.[17] Here, Reyes's verified Petition demonstrates that Ruiz has prevented him from having *any* contact with his daughter in over 2½ years.[18] As described above and in the Petition, moreover, Ruiz has already left one court's jurisdiction after learning that Reyes was seeking court assistance in gaining access to his daughter. Thus, Ruiz's pattern of conduct shows that she is determined to prevent Reyes from seeing his daughter no matter what, and is likely to leave the Court's jurisdiction if she is given notice before entry of a TRO. The second TRO requirement is also satisfied.

---

[15] Morgan, 289 F. Supp. 2d 1069-70.

[16] Petition § VII.

[17] Morgan, 289 F. Supp. at 1070.

[18] Petition ¶ 14.

**C.    The Balance Of Harms Favors Entry Of A Temporary Restraining Order**

10.    Regarding the third TRO factor, the <u>Morgan</u> court noted that maintaining the status quo by briefly preventing the minor from leaving the court's jurisdiction was an insignificant hardship compared to the risk posed by her potential flight with the minor.[19]  Here, Reyes is seeking the same type of TRO as the father in <u>Morgan,</u> so the same rationale applies. Thus, the third TRO requirement is also satisfied.

**D.    Entry Of A Temporary Restraining Order Serves The Public Interest**

11.    The <u>Morgan</u> court found the fourth TRO factor satisfied because the TRO best served the public interests expressed in the Hague Convention and ICARA by maintaining the status quo until the parties could be heard in more complete arguments.  Such is the case here, too.

**E.    Security**

12.    Reyes is willing to give security in accordance with Federal Rule of Civil Procedure 65(c), but he respectfully requests that the sum be nominal given his limited economic means, the virtual non-existence of potential damage as a result of the TRO, and the fact that the only purpose of the TRO is to ensure that RMRV is not removed from the jurisdiction of the Court before the expedited hearing on the Petition.

**F.    Attorney Certification**

13.    In accordance with Federal Rule of Civil Procedure 65(b), the applicant's attorney hereby certifies that notice should not be required for the issuance of the requested TRO because Ruiz previously left the State of Texas after learning that Reyes instituted legal proceedings there

---

[19]    <u>Morgan</u>, 289 F. Supp. at 1069-70.

to enforce his custody rights over RMRV. Providing Ruiz with notice of this proceeding before entry of a TRO may result in a recurrence of what happened in Texas.

## CONCLUSION

14.     Ruiz has already left one jurisdiction after Reyes started legal proceedings against her. The Court should enter a TRO to prevent her from doing so again. The TRO would not cause any significant inconvenience to Ruiz or RMRV.  And assuming Ruiz would obey the TRO, it would advance the public interests expressed in the Hague Convention and ICARA by maintaining the status quo until a decision can be made on the merits of the Petition.

## PRAYER

FOR THESE REASONS, Reyes asks the Court to issue a TRO enjoining the removal of RMRV from its jurisdiction pending a determination by the Court on the Petition. Reyes further asks the Court to order Ruiz to relinquish her and RMRV's travel documents for the same duration. Reyes further asks the Court to grant him all other relief to which he is entitled.

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:_____

    Sylvia Mayer
    Texas State Bar No. 00787028
    Scott R. Dayton
    Texas State Bar No. 24007093
    Dolores Cavatore
    Texas State Bar No. 24027800

700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:    713-546-5000
Facsimile:    713-224-9511

**ATTORNEYS FOR PETITIONER
OSCAR MANUEL REYES PASTÉN**

# EXHIBIT 1



REDACTED

DC **FILED**
At 8 o'clock A M

JUN 2 6 2006

MARC HAMLIN, DIST CLERK
Brazos County, Texas
By _____ Deputy

06.001525.cv.85

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ 4.20 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 12.19 |

Flavia Cecilia Ruiz Velasquez

College Station, TX 77840

7005 2570 0000 6882 1922

PS Form 3800

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature
X ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
Flavia Velasquez  6/23

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:
Flavia Cecilia Ruiz Velasquez

College Station, TX
77840

06-001525cv-300186

3. Service Type
   ☐ Certified Mail  ☐ Express Mail
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)  7005 2570 0000 6882 1922

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540



# EXHIBIT 2



CAUSE NO. 06-001525-CV-85

|                                          |   |                               |
| ---------------------------------------- | - | ----------------------------- |
|                      | § | IN THE DISTRICT COURT OF      |
| In the interest of ▮▮▮▮▮▮▮▮              | § |                               |
| ▮▮▮▮▮▮▮▮, a child.                       | § | REDACTED                      |
|                                          | § |                               |
|                                          | § |                               |
|                                          | § |                               |
|                                          | § | BRAZOS COUNTY, TEXAS          |
|                                          | § |                               |
|                                          | § |                               |
|                                          | § |                               |
|                                          | § |                               |
|                                          | § | 85th JUDICIAL DISTRICT        |

## PETITION TO ENFORCE ACCESS RIGHTS TO A CHILD

This case is about a young girl whose mother is depriving her of a relationship with her father. Oscar Manuel Reyes Pastén ("Reyes") and Flavia Cecilia Ruiz Velásquez ("Ruiz") are both citizens of Chile, where they had a daughter together out of wedlock. Ruiz is now living in the U.S. and using her distance from Chile and Reyes to nullify a Chilean court order granting Reyes access rights to his daughter. The Court is obligated by U.S. treaty and Texas law to enforce the Chilean orders.

### I. The Hague Convention

1.      On July 1, 1994, the Hague Convention on the Civil Aspects of International Child Abduction[1] (the "Hague Convention") entered into force between the U.S. and Chile. The International Child Abduction Remedies Act[2] ("ICARA") implemented the Hague Convention in

---

[1]    T.I.A.S. No. 11,670; *see also* http://travel.state.gov/family/abduction/hague_issues/hague_issues_1487.html (list of ratifying countries, including Chile).

[2]    42 U.S.C. § 11601-11610 (1988).

**REDACTED**

the U.S.[3] The Hague Convention is a U.S. treaty within the meaning of Articles II and VI of the U.S. Constitution.

2.    On behalf of Reyes, the Chilean Central Authority has submitted an application to the U.S. Central Authority under the Hague Convention to enforce Reyes's access rights to his daughter, ███████████████████. Article 21 of the Convention states that "The Central Authorities are bound . . . to promote the peaceful enjoyment of access rights and the fulfillment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights." Article 21 further permits the Central Authorities to "initiate or assist in the institution of proceedings with a view to organizing or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject." This is such a proceeding.

## II. The Minor

3.    ██████ is a minor and the subject of this suit. She is a female, born ██████, 1998 in Concepción, Octava Region, Chile. She is being kept by her mother in College Station, Brazos County, Texas.

4.    ██████ property is not directly at issue in this matter. Nevertheless, in accordance with Section 102.008 of the Texas Family Code, Reyes states that all property owned by ████ is in the possession of Ruiz. The property is believed to include clothing, toys, and other items typical for a minor of ████ age. The value of ██████ property is estimated to be less than U.S. $10,000.

---

[3]    U.S. Department of State regulations implementing the Convention and ICARA can be found at 22 C.F.R Part 94.

REDACTED

### III. The Parties

5.      Petitioner Reyes is a citizen and resident of Chile.[4]  He resides at ████████ San Felipe, Quinta Region, Chile.[5]  Reyes has standing to bring this suit because he is ██ father[6] and has been granted access rights to her by Chilean courts.[7]  He is a possessory conservator of ███ within the meaning of Texas law.  An affidavit by Reyes setting forth various statutorily required information is attached as Exhibit 1.

6.      Ruiz is ████ mother.[8]  Based upon the research of counsel, her address is ████████, College Station, Texas 77840-2403, which is where process should be served on her in accordance with Section 102.009 of the Texas Family Code.  Ruiz is a managing conservator of ███ within the meaning of Texas law.

### IV. Jurisdiction

7.      No U.S. court has continuing jurisdiction of this suit.

8.      The Court has jurisdiction of this suit under the Uniform Custody Jurisdiction and Enforcement Act ("UCCJEA").[9]  The UCCJEA requires Texas courts to enforce foreign orders granting rights of access and visitation.[10]

9.      The Court also has jurisdiction of this suit under The Hague Convention, as

---

[4]  Ex. 1 (Affidavit of Oscar Manual Reyes Pasten) ¶ 2.

[5]  Ex. 1 ¶ 2.

[6]  Ex. 1 ¶ 2.

[7]  TEX. FAM. CODE. § 102.003(a)(1) (Vernon 2002).

[8]  Ex. 1 ¶ 3.

[9]  TEX. FAM. CODE. §§ 152.101 - 152.317.

[10]  TEX. FAM. CODE. §§ 152.105, 152.303.

implemented by ICARA,[11] because this suit involves securing the effective exercise of rights of access to a child under the age of sixteen.[12]

REDACTED

### V. Reyes's Right-of-Access

10.    Ruiz and Reyes were never married to each other, but were involved in a romantic relationship with each other in Chile.[13] ▆▆▆was born during that relationship,[14] and the fact that Reyes is her father has never been contested.

11.    Ruiz and Reyes terminated their romantic relationship in 2000. Thereafter, ▆▆▆ resided primarily with Ruiz, but Reyes had regular access to his daughter.[15] Reyes also then began paying child support—a duty he continues to fulfill without fail.[16]

12.    Ruiz soon demanded increased child support from Reyes. She used ▆▆▆as leverage to negotiate the additional support by denying Reyes any contact with his daughter. After the support issue was resolved, Ruiz allowed Reyes some access to ▆▆▆and admitted that she had been wrong to use ▆▆▆as leverage when seeking increased support. Nevertheless, she later continued to fail to provide and/or hindered Reyes's access to ▆▆▆

13.    In June 2003, Ruiz requested permission from the Chilean courts to take ▆▆▆ to the U.S., ostensibly to participate in a three-year, post-graduate studies program at Texas A&M University. Reyes did not receive proper notice of the hearing on Ruiz's application to the court, but she nevertheless attempted to have the Chilean court decide her request ex parte, without

---

[11]    42 U.S.C. § 11603 ("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the [Hague] Convention.")

[12]    Tex. Fam. Code. § 152.302.

[13]    See Ex. 1 ¶ 5.

[14]    See Ex. 1 ¶ 5.

[15]    See Ex. 1 ¶ 6.

[16]    See Ex. 1 ¶ 6.

REDACTED

giving Reyes an opportunity to object.

14.    When Reyes finally learned of the hearing on Ruiz's application to take ▮ to the U.S., it had already taken place and Reyes was terrified that he would forever lose contact with his daughter.  Ruiz had recently married a U.S. citizen who lives in College Station, and Reyes was rightly suspicious that her true intention was to take ▮ to the U.S. and settle there with her new husband, rather than just to attend Texas A&M for three years and return to Chile. Therefore, he went to the Chilean court and showed that he did not receive proper notice of the hearing.  And out of fear of losing contact with his beloved daughter, Reyes vigorously contested Ruiz's request to take ▮ to the U.S.  Nevertheless, in October 2003, the Chilean court of appeal of San Miguel granted Ruiz permission to take ▮ to the U.S.[17]  The Chilean court's permission was, however, *for the limited purpose and duration of participating in the three-year program at Texas A&M.*[18]  The court also recognized the importance of ▮ having continued contact with her father, and granted him access rights during her vacations.[19]

15.    Ruiz left Chile with ▮ on December 23, 2003, without so much as giving ▮ the opportunity to say good-bye to her father, or vice-versa.[20]  She neither gave Reyes any notice that she was leaving that day, nor did she leave him any way to contact her or ▮.  In fact, he did not find out that ▮ was gone until January 2004.

16.    In July 2004, the Chilean court of appeals of Valdivia finalized Reyes's access

---

[17]   See Ex. 2 (Petition for Registration of Foreign Determination of Access Rights to Child), Tab B at 19 (official English translation of the October 30, 2003 order) and  Tab A (original Spanish version of the October 30, 2003 order).

[18]   See Ex. 2, Tab B at 19-20.

[19]   See Ex. 2, Tab B at 19-20.

[20]   See Ex. 1 ¶¶ 8-9.

REDACTED

rights to ▮▮▮[21]  The court defined the periods that Reyes would be entitled to have possession

of ▮▮▮ by reference to her vacation schedule, which of course changes depending on what

country she is living in.  Specifically, it stated, *"the visitation right is granted to the father during*

*the vacation period of the minor in the country where her mother resides."*[22]  This ensured that

the order would automatically adapt to the vacation schedule of whatever country ▮▮▮ is living

in at any given time.  It also took into account the logistical realities of when ▮▮▮ would be

able to travel back to Chile, and when Reyes would be able to have possession of her.  This order

is in full force and effect, and has not been vacated, stayed, or modified.[23]

17.    Reyes is not aware of any other proceeding that has been commenced that could

affect this proceeding.[24]

## VI.  Ruiz's Violation of the Chilean Orders

18.    Since Ruiz came to the U.S. with ▮▮▮ in 2003, she has consistently and

repeatedly violated the Chilean court orders by denying Reyes any access to ▮▮▮ whatsoever.[25]

In fact, Ruiz has thwarted all attempts by Reyes to contact or communicate with his daughter.[26]

Although Ruiz failed to leaving Reyes any way of getting in touch with her or ▮▮▮ Reyes

eventually located the phone number of Ruiz's spouse, Walter Jones.[27]  Jones provided Reyes

---

[21]  See Ex. 2, Tab D at 2 (official English translation of July 26, 2004 order) and Tab C (original Spanish version of the July 26, 2004 order).

[22]  See Ex. 2, Tab D at 2.

[23]  Although its jurisdiction over the matter is obvious, in accordance with Section 152.308 of the Texas Family, Reyes states that the Chilean courts did not expressly identify the jurisdictional basis it relied upon in exercising jurisdiction.

[24]  See Ex. 1 ¶ 4(e).

[25]  See Ex. 1 ¶ 7.

[26]  See Ex. 1 ¶¶ 7, 10-14.

[27]  See Ex. 1 ¶ 10.

REDACTED

with a phone number where he could contact ▮ and Ruiz.[28]  Reyes called that number four times (at convenient times suggested by Jones), but each time Ruiz callously denied his request to speak with his daughter.[29]  Soon thereafter, Ruiz changed her phone number.[30]  In addition, despite Ruiz's representation to the Chilean court that she intended to travel to Chile at least once a year so that ▮ could visit her paternal family,[31] she has not kept that promise.  Because of Ruiz's shameful conduct, Reyes has not seen his daughter in over 2-1/2 years.

### VII.  Authorities

19.     Section 152.105 of the Texas Family Code requires Texas courts to recognize and enforce custody determinations made in foreign countries.  It further requires Texas courts to treat a foreign country as if it were a state of the U.S. for purposes of applying the UCCJEA.[32]  Therefore, because Chile has made a child custody determination granting Reyes access rights to ▮ the Court is obligated to enforce it by ordering the relief requested below.[33]

20.     In addition to the rights expressly stated by the Chilean courts, Reyes has natural rights as ▮ father.  In fact, Chilean law states that nonpossessory parents like Ruiz have not just a right, but a duty to contact ▮ frequently and freely:

> A father or mother who does not have the personal care of a child shall not be deprived of the *right* nor shall be exempted from the *duty* to keep a direct, permanent relationship with it, and to *contact it as frequently and freely* as agreed with its guardian or, otherwise, as determined by the judge as being in the best interest of the child.[34]

---

[28]  See Ex. 1 ¶ 10.

[29]  See Ex. 1 ¶ 10.

[30]  See Ex. 1 ¶ 10.

[31]  See Ex. 2, Tab B at 3 ¶ 4.

[32]  Tex. Fam. Code § 152.105(a).

[33]  Tex. Fam. Code § 152.105(a)-(b); *Saavedra v. Schmidt*, 96 S.W.3d 533, 543-44 (Tex.    App.—Austin 2002, no pet.).

[34]  See Ex. 3, art. 229 (authentic translation of relevant Chilean laws) (emphasis added).

REDACTED

Thus, Chilean law condemns conduct like Ruiz's, where a father is denied all access to his child.

21.     Similarly, it is the public policy of the State of Texas to assure that children will have frequent and continuing contact with parents who, like Reyes, have shown the ability to act in the best interest of the child, and to encourage parents to share in the rights and duties of raising their child after separation.[35]  Thus, under both Chilean and Texas[36] law, Reyes is entitled to contact ████ by telephone, email, etc.

22.     In addition, Section 153.073 of the Texas Family Code declares that, *at all times*, parents like Reyes have the right:

    a.     to receive information from any other conservator of the child concerning the health, education, and welfare of the child;

    b.     to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

    c.     of access to medical, dental, psychological, and educational records of the child;

    d.     to consult with a physician, dentist, or psychologist of the child;

    e.     to consult with school officials concerning the child's welfare and educational status, including school activities;

    f.     to attend school activities;

    g.     to be designated on the child's records as a person to be notified in case of an emergency;

    h.     to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

    i.     to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

The Texas Family Code provides that these rights exist unless they are limited by a court order.[37]

Therefore, Reyes is entitled to these statutory rights because no court has divested him of them.

---

[35]     TEX. FAM. CODE § 153.001(a)(1), (3).

[36]     *See* TEX. FAM. CODE § 153.193 (Limitations on a parent's right to possession or access to a child may not exceed those that are required to protect the best interest of the child).

[37]     TEX. FAM. CODE § 153.073

**VIII.  Requested Relief**

REDACTED

23.    Consistent with the Chilean orders, Reyes asks the Court to:

a.    order Ruiz to deliver custody of ▮▮▮ to Reyes—in, at his option, either Chile or the U.S.—during any dates that Reyes requests while she is on vacation;

b.    order Ruiz to communicate with Reyes in a civil manner to facilitate his visitation periods;

c.    order Ruiz to provide Reyes, and ▮▮▮ relatives on his side of the family, with daily, unrestricted access to ▮▮▮ via email, telephone, mail, instant messenger service, and any other reasonable medium of communication, regardless of who is entitled to possession of ▮▮▮ during any given time;

d.    order Ruiz to recognize and facilitate Reyes's rights under Sections 153.073 and 153.076 of the Texas Family Code;

e.    grant Reyes additional periods of access to compensate for those periods denied by Ruiz;

f.    order Ruiz to reimburse him for the documented expenses he has incurred as a result of her wrongful denial of access to ▮▮▮ currently U.S. $714 (his actual expenses are much higher);[38]

g.    order Ruiz to pay, in accordance with Section 152.312 of the Texas Family Code, the reasonable fees, costs, and expenses of his attorneys in this matter, Weil, Gotshal & Manges LLP (in accordance with Section 106.002(a) of the Texas Family Code, Reyes asks the Court to order these fees and expenses paid directly to his attorneys); and

h.    grant him all other relief to which he is entitled.

**IX.  Provisional Orders**

24.    Pending further hearing in this Court, Reyes requests that he be given immediate access to ▮▮▮ as outlined above in Paragraphs 23(a), (c), and (d).

---

[38] Ex. 1 ¶ 15

25.    Reyes further asks the Court to issue an immediate order prohibiting the removal of ███ from its jurisdiction (except to return to Chile), and that it take into safe-keeping all of ███ travel documents.

REDACTED

## X. Bond

29.    In accordance with Section 153.011 of the Texas Family Code, Reyes further requests that Ruiz be ordered to execute a bond or deposit security to ensure her compliance with the Chilean court's orders.

## XI. Expedited Hearing

30.    As required by Section 152.308(c) of the Texas Family Code, Reyes asks the Court to issue an order directing Ruiz to appear in person with Rocío at a hearing to be held on the next judicial day after service of the order.

31.    The Hague Convention mandates that the Court act expeditiously in this proceeding, and generally requires a decision within six weeks.[39]

## XII. Registration of Child Custody Determinations

32.    The above-referenced Chilean court orders are attached,[40] and were registered with this Court on June 16, 2006 as Cause No. 06-001525-CV-85, in accordance with Section 152.305 of the Texas Family Code.

---

[39]    Hague Convention, art. 11.

[40]    Ex. 2.

## XIII. Discovery Level

33.    Reyes requests that any necessary discovery be conducted on an expedited basis under a Level 3 Discovery Control Plan.

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: _____
        Sylvia Mayer
        State Bar No. 00787028
        Scott R. Dayton
        State Bar No. 24007093
        Dolores Cavatore
        State Bar No. 24027800

700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:    713-546-5100
Facsimile:    713-224-9511

**ATTORNEYS FOR PETITIONER
OSCAR MANUEL REYES PASTÉN**



CAUSE NO. 06-001525-CV-85



|  |  |
|---|---|
| In the interest of ████████████ | § |
| ███████, a child. | § |
|  | § |

§    IN THE DISTRICT COURT OF

§

§    BRAZOS COUNTY, TEXAS

§    85th JUDICIAL DISTRICT

## VERIFICATION

The undersigned states under oath: "I am the Petitioner in the foregoing Petition To Enforce Access Rights To A Child. I have personal knowledge of the allegations and facts stated in it, and they are true and correct."

_____
Oscar Manuel Reyes Pastén

SUBSCRIBED AND SWORN to me by Oscar Manuel Reyes Pastén on the

__0 2 AGO 2006___ day of _____, 200__

_____
Notary Public

# EXHIBIT 3



# BRAZOS COUNTY OFFICE OF THE SHERIFF
## Christopher C. Kirk

Jim Mann, Chief Deputy
Wayne Dicky, Jail Administrator

300 E. 26th St., Suite 105
Bryan, Texas 77803-5359

---

August 28, 2006

REDACTED

Sylvia Mayer
700 Louisiana
Houston, Texas 77002

Cause No. 06-001525-CV-85; in the interest of ██████████████ A Child

Dear Ms. Mayer:

Enclosed is a copy of the Citation that is being returned to the Brazos County District Clerk's Office.

The documents are returned unserved. Upon receipt of the documents, Deputy Perry went to the address listed for service at ████████████ College Station. There were new tenants at this address.

We checked local records and found that he had moved to ████████████ Montgomery, Alabama with a telephone listing as ████████ We called this number and he confirmed he did move to this address.

If you have any questions, you may contact me at 979-361-4920.

Sincerely,

Sergeant Thomas L. Randall
for Christopher C. Kirk
Sheriff of Brazos County, Texas

cc: District Clerk's Office
Enclosures
TLR:sh

---

Office: (979) 361-4100        Administration: (979) 361-4148        Fax: (979) 361-4170

CITATION-GENERAL-PERSONAL SERVICES IN STATE-EITHER COURT

CLERK OF THE COURT
Marc Hamlin
300 East 26th Street, Suite 216
Bryan, TX 77803

ATTORNEY FOR PLAINTIFF
MAYER, SYLVIA
700 LOUISIANA
HOUSTON, TX 77002

**REDACTED**

THE STATE OF TEXAS                     **CITATION**
NOTICE TO THE DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO **Flavia Cecilia Ruiz Velasquez** who may be served at ███████████, College Station, Tx 77840
Defendant,
Greeting:
        You are hereby commanded to appear by filing a written answer to the **Petition To Enforce Access Rights to A Child, Order To Appear** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **85th District Court** of Brazos County, Texas at the Courthouse of said County in Bryan, Texas. Said Petition was filed on the **8th** day of **August** A.D. 2006, in the case, numbered **06-001525-CV-85** on the docket of said court, and styled,

**IN THE INTEREST OF** ████████████████ **A CHILD**

        The nature of Plaintiff's demand is fully shown by a true and correct copy of **Petition To Enforce Access Rights to A Child, Order To Appear** accompanying this citation and made a part thereof.
        The officer executing the writ shall promptly serve the same according to requirements of the law, and the mandates thereof, and make due return as the law directs.
        Issued and given under my hand and sealed of said Court at office, this the **15th** day of **August**, 2006

Marc Hamlin
Clerk of Brazos County, Texas

By ___*Tiffany Newton*___ Deputy

**OFFICER'S RETURN**
        Came to hand on the __15__ day of __August__, 20 __06__, at __4:00__ o'clock __P.__M.
Executed at _____ within the County of _____ at _____ o'clock
____.M.
on the _____ day of ____████████____ 20 ____ by delivering to the within
named __MOVED TO__ ████████████ __Peace, Montgomery, Alabama__
_____ each,
in person, a true copy of this citation together with the accompanying copy of the petition, having first attached such
copy of such petition to such copy of citation and endorsed on such copy of citation the date of delivery.
                Total fee for serving this citation _____
                                                                        Sheriff Account
To certify which witness my hand officially.

For Clerk's Use                                         **Christopher C. Kirk, Sheriff**
                                                                        **Brazos**                No.
Taxed _____                                 Sheriff of _____ County, Texas
Returned Record_____                 By __*Clay Perry*__ Deputy
                                                                        Clay Perry

Special Services Division

CHRISTOPHER C. KIRK, SHERIFF
BRAZOS COUNTY, TEXAS
300 E. 26th Street, Suite 105
Bryan, Texas 77803-5359
RETURN SERVICE REQUESTED

PRESORTED
FIRST CLASS

UNITED STATES POSTAL
$ 00.56³

Sylvia Mayer
700 Louisiana
Houston, Texas 77002

NIXIE          773          1          10   08/28/06

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC:   77003396530          *0893-09213-23-18

**EXHIBIT 4**

FILE COPY

# WEIL, GOTSHAL & MANGES LLP

700 LOUISIANA

SUITE 1600

HOUSTON, TEXAS 77002

(713) 546-5000

FAX: (713) 224-9511

AUSTIN

BOSTON

BRUSSELS

BUDAPEST

DALLAS

FRANKFURT

LONDON

MIAMI

MUNICH

NEW YORK

PARIS

PRAGUE

SILICON VALLEY

SINGAPORE

WARSAW

WASHINGTON, D.C.

August 21, 2006

WRITER'S DIRECT LINE

713/546-5216

scott.dayton@weil.com

*REDACTED*

*Via Facsimile*

Ms. Andrea O'Neill
District Court Coordinator
85th Judicial District Court
Brazos County Courthouse
300 E. 26th Street, Suite 216
Bryan, TX 77803

Re: Cause No. 06-001525-CV-85; *In the Interest of* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓*a child;* In the 85th Judicial District Court of Brazos County, Texas

Dear Ms. O'Neill:

A hearing on the Petition to Enforce Access Rights to a Child was previously set in the referenced matter for Friday, August 25, 2006. When attempting to serve respondent Flavia Cecilia Ruiz Velásquez with the Petition and notice of hearing, however, we learned that she apparently moved out of the State of Texas sometime after receiving the Petition for Registration of Foreign Determination of Access Rights To Child. Therefore, please cancel the August 25, 2006 hearing until we are able to confirm Ms. Velásquez's current residence.

Thank you for your assistance.

Sincerely,



Scott R. Dayton

SRD/pkp

HO1:\336999\01\7813011.DOC\99995.2438

**EXHIBIT 5**



NO. 06-001525-W-85

IN THE DISTRICT COURT OF

§
§
§
§



In the interest of ██████████
████████████, a child.

§
§
§
§
§        BRAZOS COUNTY, TEXAS
§
§
§
§
§
§
§        85th JUDICIAL DISTRICT

REDACTED

**FILED**
DC
At_____o'clock_____M
SEP 0 1 2006
MARC HAMLIN, DIST CLERK
Brazos County, Texas
_____, Deputy

## NONSUIT WITHOUT PREJUDICE

1.     Petitioner Oscar Manuel Reyes Pastén ("Reyes") has not been able to serve respondent Flavia Cecilia Ruiz Velásquez ("Ruiz") in the referenced action because she has moved to the State of Alabama.

2.     Reyes is in the process of filing a similar action against Ruiz in the State of Alabama.

3.     Therefore, in accordance with Texas Rule of Civil Procedure 162, Reyes files this nonsuit as to all claims made in his Petition to Enforce Access Rights to a Child.

4.     This nonsuit is without prejudice.

5.     The foreign determinations of access rights to a child that were registered with the Court on June 16, 2006 remain registered in accordance with Section 152.305 of the Texas Family Code.

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: _____

     Sylvia Mayer
     State Bar No. 00787028
     Scott R. Dayton
     State Bar No. 24007093
     Dolores Cavatore
     State Bar No. 24027800
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:    (713) 546-5000
Facsimile:    (713) 224-9511

ATTORNEYS FOR OSCAR MANUEL
REYES PASTÉN

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 SEP 18 A 10: 23

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

2:06 cv 832-MHT

OSCAR MANUEL REYES PASTÉN,

   Petitioner,

vs.

FLAVIA CECILIA RUIZ VELÁSQUEZ,

   Respondent.

)
)
)
)
)
)
)
)
)
)

C.A. No. _____

**REDACTED**

## TEMPORARY RESTRAINING ORDER

  1. After considering petitioner Oscar Manuel Reyes Pastén's ("Reyes") application

for a temporary restraining order against respondent Flavia Cecilia Ruiz Velásquez ("Ruiz"), the

Court **FINDS** that there is a threat of irreparable harm to the custody rights of Reyes and the

well-being of ▮▮▮▮▮▮▮▮▮▮▮▮ ("RMRV") if Ruiz were to remove RMRV from

the jurisdiction of this Court prior to a hearing on the merits of Reyes's Petition. Among other

things, RMRV's removal from the Court's jurisdiction would avoid a final determination on the

Petition For The Return Of A Child Under The Hague Convention On The Civil Aspects Of

International Child Abduction, resulting in Reyes's continued deprivation of a relationship with

his daughter, and of RMRV with her father. RMRV's removal from the Court's jurisdiction may

also result in the secreting of RMRV at a location designed to prevent Reyes from exercising his

custody rights or seeking court assistance in doing so.

  2. The Court **FURTHER FINDS** that Ruiz has previously left the State of Texas

after learning of Reyes's legal filings in that state, and that providing notice of this temporary

restraining to Ruiz prior to its issuance may similarly cause her to leave the State of Alabama.

Therefore, in the light of all of the circumstances known to the Court and upon a balance of the equities, the Court concludes that a temporary restraining order should issue.

    3.       Ruiz is **ORDERED ENJOINED** as follows:

        a.   Neither Ruiz, nor any person acting in concert or participating with her, including her attorneys and spouse, shall take any action to remove RMRV from the jurisdiction of this Court pending a determination by this Court on the Petition For The Return Of A Child Under The Hague Convention On The Civil Aspects Of International Child Abduction.

        b.   This temporary restraining order shall expire at the conclusion of the _____, 2006 hearing on the Petition For The Return Of A Child Under The Hague Convention On The Civil Aspects Of International Child Abduction, unless prior to that time, the order is extended, upon good cause shown, for a further ten days, the parties consent to a longer period, or the hearing is continued upon good cause shown and this order is extended until the time of such hearing.

        c.   This temporary restraining order shall be binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order.

    4.       Reyes shall post security in the amount of $_____.

    5.       It is **FURTHER ORDERED** that the United States Marshals Service shall promptly serve a copy of this Order on Flavia Cecilia Ruiz Velásquez at ▮▮▮▮▮▮▮▮▮▮ Montgomery, Alabama, ▮▮▮▮▮▮▮, or wherever else she may be found. The United States Marshals Service shall simultaneously serve Flavia Cecilia Ruiz Velásquez with the Notice and Order To Appear, Docket No. _____.

    6.       Ruiz is **FURTHER ORDERED** to relinquish her and RMRV's passport and travel visas to the United States Marshal Service upon service of this order. The United States Marshal Service will deliver the documents to the Court for safekeeping for the duration of this order.

SIGNED on the _____ day of_____, 200__ at _____ o'clock _____.m.

_____
United States District Judge