IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| OSCAR MANUEL REYES PASTÉN, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) CIVIL ACTION NO. ) 2:06cv832-MHT ) (WO) |
| FLAVIA CECILIA RUIZ VELÁSQUEZ, | ) ) ) |
| Respondent. | ) |

OPINION

In this lawsuit, petitioner Oscar Manuel Reyes Pastén asks that this court require respondent Flavia Cecilia Ruiz Velásquez to return their daughter RMRV from Alabama to Chile, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, reprinted in 1988 WL 411501, and implemented by the International Child Abduction Remedies Act, 42 U.S.C.

§§ 11601-11611.  This court has jurisdiction under 42 U.S.C. § 11603 and 28 U.S.C. § 1331.  At the end of a hearing held on October 11, 2006, and based on the evidence presented and arguments of counsel for the parties, the court orally granted in part Reyes's relief requested; the court promised that a written opinion and judgment would follow.  This is the promised opinion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

RMRV was born to Reyes and Ruiz in 1998.  The two were never married, and they terminated their relationship in 2000.  Since then, Ruiz married an American citizen.  Reyes still resides in Chile.

Ruiz lived in Chile until late 2003, when she and RMRV came to the United States, ostensibly so that Ruiz could enroll in oceanography school at Texas A & M University.  Under Chilean law, Ruiz could not remove RMRV from Chile without Reyes's permission, which he declined to give.  Therefore, before leaving Chile,

Ruiz sought, and a Chilean court granted, permission to bring her daughter to the United States for three years, during her enrollment in the oceanography school. However, Ruiz never attended the university; instead, sometime in 2006, she moved to Alabama. She did not notify Reyes or the Chilean court.

Upon learning that Ruiz had moved to Alabama, Reyes filed a petition in this court for the return of RMRV to Chile based on the Hague Convention. Out of concern that Ruiz would further flee with RMRV, this court immediately issued a restraining order prohibiting the removal of RMRV from this court's jurisdiction until Reyes's petition could be heard on the merits. At the hearing on the matter on October 11, 2006, Ruiz expressed that she intends to take RMRV, permanently, to live in Australia. She said that she had already initiated legal proceedings in Chile, seeking permission to take RMRV there.

At the end of the hearing, the court orally held that, by taking RMRV from Texas to Alabama, Ruiz had

exceeded the limitation placed on her by the Chilean court and had, thereby, violated Reyes's custody rights under the Hague Convention.  The court required that Ruiz take RMRV back to Chile.  However, in order to allow resolution of Ruiz's request to the Chilean courts to take RMRV to Australia, this court gave Ruiz approximately 45 day to return RMRV to Chile.  Also, our of concern that Ruiz might flee with RMRV pending resolution of her new litigation in Chile, the court required that Ruiz turn over her passport to the court and not take RMRV out of the jurisdiction of the court without its permission.  As stated, the court promised that a written opinion and judgment would follow.

## II.  DISCUSSION

The Hague Convention on the Civil Aspects of International Child Abduction has the stated purpose of "protect[ing] children internationally from the harmful effects of their wrongful removal or retention and establish[ing] procedures to ensure their prompt return

to the State of their habitual residence, as well as to secur[ing] protection for rights of access." Hague Convention, introduction.

The purpose of the Convention is not to adjudicate custody rights in the State to which the child was removed, but rather "to return to the status quo before the wrongful removal or retention." Ruiz v. Tenorio, 392 F.3d 1247, 1250 (11th Cir. 2004) (quoting Shealy v. Shealy, 295 F.3d 1117, 1121 (10th Cir. 2002)). To that end, the Convention establishes, among other things, a remedy of return to the "State of habitual residence" of the child. Hague Convention, Arts. III, XII.

Article III of the Hague Convention sets forth the standards for determining whether a case of wrongful removal has been made out such that the child must be returned to the State of habitual residence. Hague Convention, Art. XII. That Article provides that:

> "The removal or the retention of a child is to be considered wrongful where- a) it is in breach of rights of custody attributed to a person, an institution or any other body, either

>jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

Hague Convention, Art. III.

As this language makes clear, there are three elements to be examined by a court here.  First, a court should determine where the child was habitually a resident immediately before the purportedly wrongful removal.  Second, the court should determine whether the complaining party had a right of custody under that country's law, and whether the respondent violated that right of custody by removal.  Third, the court should determine whether the right was being exercised at the time of the removal or would have been exercised but for the removal.

### 1. Habitual Residence

Neither the Hague Convention nor its implementing legislation defines "habitual residence." The Eleventh Circuit, however, recently considered the issue in <u>Ruiz v. Tenorio</u>, 392 F.3d 1247 (11th Cir 2004). In that court's view, the "crucial factor" in establishing habitual residence is that "the person or persons entitled to fix the place of the child's residence" have "form[ed] a settled intention to abandon the [place] one left behind." 392 F.3d at 1253. Under Chilean law, Reyes and Ruiz were jointly entitled to fix the child's residence, but they did not "settle" any intention that RMRV would abandon Chile. Reyes has, at all times relevant here, strenuously objected to RMRV's removal from Chile.

Further, whatever Ruiz's later-developed or concealed intention, she represented to the Chilean court, and RMRV's removal was premised on, her intention to return to Chile after a period of three years. Thus, here there was not a settled intention to abandon Chile on the part of both of those entitled to

fix the place of residence. Chile, and not the United States, is therefore the habitual place of RMRV's residence.

### 2. Right of Custody and Violation Of Right of Custody

Whether a right of custody exists is to be determined by reference to the law of the country of habitual residence. Hague Convention, Article III(a).[1] Under the law of Chile, and under the Chilean court's decision on RMRV's custody, Reyes's custody rights have been violated.

Chile grants a non-custodial parent a ne exeat right: the right to determine whether the child will leave the country. Admittedly, Ruiz was granted conditional permission by order of a Chilean court to

---

1. At the outset, it is important to note that the Hague Convention distinguishes between rights of custody and rights of access; only in the event of a breach of a right to custody will removal of the child be appropriate. Compare, Hague Convention Art. XI (relating to custody right) and Hague Convention Art. XXI (relating to rights of access).

leave the country. Reyes argues, however, that violation of the conditions of the Chilean court's order can be a violation of his <u>ne exeat</u> right. Reyes is correct.

Under Chilean law, although when parents live separately Chile vests the responsibility for personal care of the child in the mother,[2] a non-custodial parent still has a <u>ne exeat</u> right.[3] In interpreting the Hague Convention, the Eleventh Circuit has held that violation of the <u>ne exeat</u> right is enough to qualify as a violation of custody rights. In <u>Furnes v. Reeves</u>, 362 F.3d 702 (11th Cir. 2004), the appellate court found that the <u>ne exeat</u> right was a "custody right" within the meaning of the Hague Convention. Custody under the Convention, the court further explained, does not mean the right to possess the child or physical control over the child; rather, certain rights of

---

2. Pet. For Return of the Child (Doc. No. 1-13), Chilean Code, § 225.
3. <u>Id</u>. (Doc. No. 2-3), Chilean Court Decision ¶ 18 (discussing § 49 of the juvenile code).

control will qualify as custody rights. 362 F.3d at 714. The court cited the Hague Convention for the proposition that those rights are those "relating to the care of the person of the child" and, in particular, the right to determine the child's place of residence. <u>Id</u>. at 714, 716 (quoting Hague Convention, Art. V(a)). The court said that the <u>ne exeat</u> right was exactly such a right: a right to determine where the child will live, even if, as was the case in <u>Furnes</u>, the country of habitual residence grants only the right to veto exit from the country, and not the right to determine where within the country of habitual residence the child will live. <u>Id</u>.

On the issue of whether Reyes's right was violated, this case is similar to the one confronted by the South African Constitutional Court in <u>Sonderup v. Tondelli</u>, 2000(1) Constitutional Court of South Africa 1171 (CC). In that case, which was cited with approval by the Eleventh Circuit in <u>Furnes</u>, the South African court held that a father's <u>ne exeat</u> right was violated

because the mother of the child had violated an order issued by the country of habitual residence. The order provided that the mother was allowed to leave with the child for one month; the mother, however, did not return to the country of habitual residence after a month. After finding that the court's order gave the father a <u>ne exeat</u> right, the court there concluded that, "[The mother's] failure to return ... with the child [after a month] was a breach of the conditions upon which she was entitled to exercise her rights of custody and a concomitant breach of the father's rights under the agreement and order." <u>Sonderup</u>, 2000(1) Constitutional Court of South Africa 1171 ¶ 25. Here, the situation is similar: a breach of the court's order granting the mother a right to remove is a breach of the father's custody right.

Ruiz's violation of the Chilean court's order amounts to a violation of Reyes's <u>ne exeat</u> right. The Chilean court determined that Reyes had a legitimate <u>ne exeat</u> right, but that Ruiz could leave the country

under **certain** **conditions** without violating that right. Thus, the Chilean court limited Reyes's *ne* *exeat* right, but only to the degree that it allowed Ruiz to take RMRV to Texas so that Ruiz could study oceanography. Because those conditions have been violated, Ruiz is no longer within the boundaries of Reyes's right, set forth in the Chilean court's opinion. That is, to whatever extent Reyes's right to prohibit RMRV's exit from the country was limited by the Chilean court's opinion, Ruiz is beyond the limit of that right in going beyond the court's order.

### 3. Exercise of Custody Rights

The third condition is that the right in question was being exercised at the time of removal, or would have been but for the removal. It is clear that Reyes sought to exercise the *ne* *exeat* right within the meaning of the Hague Convention. Before the removal, Reyes has sought to prevent removal through the exercise of his *ne* *exeat* right. As in *Garcia v.*

Angarita, 440 F.Supp.2d 1364 (S.D. Fla. 2006) (Huck, J.), which considered the "exercise" of the ne exeat right, because, "[a]t the outset, [the mother] recognized that the children could not travel abroad without [the father's] consent, and [because] he gave his consent to international travel only for [a] limited purpose," there "can be no question that [the father] was actually exercising his custody rights." 440 F.Supp.2d at 1379.  What happened between Reyes and Ruiz is similar: Ruiz, the mother, had to seek consent from Reyes, the father, to remove their child; however, Reyes strenuously disagreed.   Like the father in Garcia, Reyes sought to retain control over the place of residence, even if the children were, at the outset, legitimately removed.

***

The court, therefore, holds that Ruiz wrongfully removed RMRV within the meaning of the Hague Convention.  The court will therefore memorialize the oral order entered on October 11, 2006, by entering a

13

written judgment and injunction as follows: The court will require that Ruiz take RMRV back to Chile, but, so as first to allow resolution of Ruiz's pending request to the Chilean courts to take RMRV to Australia, this court will give Ruiz until November 28, 2006, to return RMRV to Chile. Also, out of concern that Ruiz might flee with RMRV pending resolution of her new litigation in Chile, the court will continue to prohibit Ruiz from removing RMRV from the jurisdiction of this court without this court's permission and will keep Ruiz's passport until she files with the court a copy of her plane ticket and an affidavit reflecting that, and explaining why, she needs her passport to carry out immediately the judgment and injunction entered today. To the extent the written judgment and injunction entered today conflict with the oral order, the written judgment and injunction control.

    DONE, this the 27th day of October, 2006.

                                         /s/ Myron H. Thompson
                                   UNITED STATES DISTRICT JUDGE